## CHARLES HAYNES v. TOWN OF BURLINGTON.

*Highways.    Water Course.    Evidence.    Statute.    Towns.    Damages.*

The statute provision that "All highways shall be laid out, made and repaired, and all damages to the owners of lands shall be paid at the expense of the several towns in which they are located," is held equivalent to saying that the several towns shall build and keep in repair the highways within such towns; and that the building and keeping such highways in repair are to be regarded as strictly corporate duties devolved upon towns. .

These corporate duties impose upon towns obligations very like those existing between the owners of adjoining lands.

In building a highway across a natural stream a town should provide for, and maintain, a free passage of the water, so it may not be obstructed and pent up so as to flow back on land belonging to the riparian proprietors.

When the highway in question was built, a culvert of ample dimensions was placed under it, which for many years sufficed for the passage of all the water of a natural stream through it, but by the action of the highway surveyors, and street commissioners of the town, from year to year, in raising the grade of the street over the culvert, the earth washed and slid down so as to enlarge the base of the embankment so much as to finally cover the mouth of the culvert and prevent the water from passing through, to the injury of the plaintiff's land. *Held,* that the town, upon notice, was liable for the damages to the plaintiff, not on the ground that the town was liable for the acts of the surveyors or commissioners as agents of the town, but on the ground that it was as much the duty of the town to keep and maintain a sufficient passage for the water, as to provide for it originally.

But the town would not be liable for the act of a railroad company, that owned the land adjoining the highway below, in filling up a ravine on their land, which constituted the natural channel for the water from the culvert under the highway, and so by preventing the water from running off, contributing in part to the plaintiff's injury.

A part of the injury complained of was that by the setting back of the water upon the stone foundations of his building, they were cracked, thrown out of shape and injured, and upon this point the evidence was conflicting. The defendant offered to show the condition of the walls of a certain building, situated on the slope of the same ravine on which the plaintiff's house was, about twenty-five rods below the said highway, and that the walls thereof had become cracked by the action of the frost without having water standing about them. *Held,* that this evidence was properly rejected, on the ground that the two buildings were not similar in location and surroundings, so that one would be a fair test for the other.

ACTION ON THE CASE, to recover damages alleged to have been caused to the plaintiff's land and buildings by the stoppage of a natural stream of water. Plea, the general issue, and trial by jury, at the September Term, 1864, Chittenden county, PIERPOINT, J., presiding.

On trial it appeared that the plaintiff was, at the time of the commencement of this suit, the owner of the premises described in the declaration, and had been so ever since the year 1837 ; that these premises consist of about half an acre of land with a four story wooden building thereon erected by the plaintiff in 1838, situated in the angle formed by the intersection of College and White streets in Burlington, the former street being the southern, and the latter the western, boundary of said land ; that said land lies partly in a deep ravine and partly on the westerly slope of the ravine, and that from time immemorial a small stream of water formed by the natural drainage of the surface of the ground for a long distance above the plaintiff's land, and by various springs at various places, one of which was on and near the northerly limit of the plaintiff's land has run southerly through said ravine across the plaintiff's land, and been discharged at the place where the culvert hereinafter mentioned stands, that being the natural point of discharge, and the only place of discharge possible as the land lies, the street being about thirty feet high there across the plaintiff's land.

It was admitted that College and White streets were, and for more than thirty years before the alleged injury to the plaintiff, had been highways which it was the legal duty of the town of Burlington, under the statute, to keep in repair, and which they had maintained and kept in repair accordingly. It also appeared that when College street was first constructed by the town across said ravine, more than thirty years before the injury complained of, a stone culvert of suitable construction and dimensions was placed in and across said street for the purpose of affording a passage for the water of said stream, and that until at or about the time of the injury complained of, this culvert had always been maintained by the town and afforded a sufficient passage for the stream and all the water falling into the ravine above, and that the head or upper end of the culvert reached to within about two feet of the plaintiff's south line.

The plaintiff's testimony tended to show that the culvert had gradually become so obstructed and choked up with earth, that in March, 1862, when the snow was going off, the water set back over a portion of his land and into the basement of said building, and that this occurred on one or two other occasions during that year, and that in June,

1863, the street commissioners of the town, acting only under the general powers conferred upon them by statute, caused College street to be raised and somewhat widened at the place where the culvert was situated, by reason of which the earth slid down so as to cover the upper end of the culvert, and wholly prevent the passage of water through it, in which condition it has remained ever since, causing the water of said stream and that which has fallen on the adjacent slopes, to stand upon the plaintiff's land constantly ever since, whereby the plaintiff's land and building have been injured.

It appeared that about twelve years before the culvert was so stopped up, the Vermont Central Railroad company constructed a wooden culvert about twenty rods in length, connecting with the lower end of said stone culvert, and covered it over with earth to a great depth, through which wooden culvert the water passing through the stone culvert passed off for several years without obstruction, but at length the wooden culvert, near where it connects with the stone culvert, by reason of decay and of the defectiveness of its original construction, fell in; whereby the passage of the water through the stone culvert was greatly impeded and nearly stopped, and the defendant's testimony tended to show that this was the cause of the filling up and stoppage of the stone culvert as aforesaid, though the plaintiff's testimony tended to show it was occasioned partly by the decay of the wood culvert and partly by the action of the town as aforesaid.

It was admitted that said railroad company, at the time of the construction by it of the wooden culvert, had a lawful title to the land upon which it was built, and a legal right to construct said culvert in a proper way.

White street where it intersects with College street, is situated near the top of the western slope of said ravine, and the plaintiff's testimony tended to show that at the time he erected said building in 1837 or 1838, and for several years afterwards, a portion of the surface water flowing from White street during rains and thaws passed down on the north side of College street at or near the foot of the embankment upon which the street is built, so far from the building aforesaid as not to touch or injure it, into the ravine ; that College street opposite the plaintiff's building, has from time to time, as

necessity required, since said building was erected, been raised and improved by the street commissioners and highway surveyors of the town, acting under the authority conferred upon them by the statute, and that by reason of the gradual washing and sliding down of the earth on the north side of the embankment, the course of the surface water so passing into the ravine from White street, had, before the commencement of this suit, been diverted some three or four feet to the north and against the southerly foundation of said building. But there was no testimony tending to show, nor was it claimed, that there was any negligence or improper conduct on the part of the street commissioners and highway surveyors in so raising and improving the street at this point, nor in raising and widening it at the place where the stone culvert is situated, as before stated, unless their neglect to protect said culvert against filling was such, which the plaintiff's evidence tended to show they might easily have done.

The plaintiff having claimed and introduced testimony tending to show, that by reason of the setting back of the water upon the stone foundations of his building, they were cracked, thrown out of shape, and injured, and the testimony being conflicting as to whether this was produced by the setting back of the water or the action of the frost the defendant offered testimony, and, against the objection of the plaintiff, was allowed to show that the foundation walls of other buildings generally which were sufficiently sunk into the earth and well built, upon the same slope of said ravine, upon soil of the same nature as that where the plaintiff's building stands, by the action of frost alone, without having water upon them, had been similarly cracked and thrown out of shape. The defendant then offered to show the condition of the walls of a certain building belonging to one Benns, situated on the slope of the same ravine about twenty-five rods below said road, and that the walls thereof had become cracked by the action of the frost without having water standing about them; this was objected to and excluded by the court, to which the defendant excepted. The plaintiff gave in evidence that the selectmen had full notice of the condition of the premises and state of the water.

The court instructed the jury that the stone culvert having been

constructed by the town and having remained and been maintained more than thirty years, and that point being the natural and only practicable˙ place of discharge for said stream, the law imposed upon the town the duty to keep it open while they maintained the road so as to carry off the water ; and that if the town suffered the culvert to be obstructed for an unreasonable time after notice, the town would be responsible for any damage which the plaintiff thereby sustained in actual injury to his property, no matter whether such obstruction was caused by the widening of the road and sliding down of the dirt, by the gradual filling up of the culvert from the accumulation of earth from above, or by the action of the railroad company—if obstructed by any of these causes it was the duty of the town to remove the obstruction so that the water might, in its natural course, pass off.

On the subject of damages the jury were told that they should look at all the circumstances disclosed by the testimony, the situation and condition of the property, the extent to which it was overflowed, the effect of the water upon the building, and the amount it would have cost, at the time the suit was commenced, to repair the property and restore it to its former condition, and that the plaintiff was entitled to a verdict for all the actual injury to his property he had sustained at the time of the commencement of the suit, so far as the same was occasioned by the obstruction of the culvert, but could not recover for any increase of cost of repairs which had arisen since the commencement of the suit.

Verdict for the plaintiff. To the ruling of the court excluding the testimony offered by the defendant in regard to the other building mentioned above, to the refusal of the court to charge as requested, and to the charge as given, the defendant excepted.

*Wm. G. Shaw* and *E. R. Hard,* for the defendant.

1. The town had no *private property,* or interest of any sort, in the street in question. It was merely a public highway, and the town had no more or greater relation to it than the county or state, —save, so far as the statute has created such relation.

II. Towns have no control over highway surveyors and street commissioners. *Ball* v. *Winchester,* 32 N. H. 435 ; *Perley* v. *George-*

*town*, 7 Gray, 464 ; *Buttrick* v. *Lowell*, 1 Allen, 172 ; *Griggs* v. *Foote,* 4 Allen, 195 ; *Vinal* v. *Dorchester*, 7 Gray, 421 ; *Stone* v. *Augusta,* 46 Maine, 127.

III. All the powers and duties as to highways are imposed by the *general statutes upon all towns and officers* alike, for general public purposes, and without any assent of the towns. *Eastman* v. *Meredith*, 36 N. H. 284 ; *Weet* v. *Brockport*, 16 N. Y. 161.

IV. The only ground upon which this case is put, or can be put in the best point of view for the plaintiff, is that the alleged misfeasance or nonfeasance of the officers, elected by the votes of the town, is in law, the act or neglect of the *town* itself. And to establish the proposition, it must be proved either 1st, that the *statute* makes the town liable in such a case, or 2d, that the legal relation of *master and servant* exists between the towns and the officers.

First—as to the statute. The unvarying construction of our own and of similar statutes, has from the earliest period, been, that an action is given only to those injured from an insufficiency of highways *for the purposes* of *travel*, whereby an injury has happened to one using the way for that purpose ; and that beyond that, no right of action arises from the statute in any case. *Baxter* v. *Winooski Turnpike Co.*, 22 Vt. 114 ; *Hyde* v. *Jamaica*, 27 Vt. 443 ; *Peck* v. *Ellsworth*, 36 Maine, 393 ; *Ball* v. *Winchester*, 32 N. H. 435 ; *Mower* v. *Leicester*, 9 Mass. 247 ; *Chidsey* v. *Canton*, 17 Conn. 475 ; *Flagg* v. *Worcester*, 13 Gray, 601 ; *Barry* v. *Lowell*, 8 Allen, 127 ; *Stonington* v. *Bates*, 31 Conn. 213 ; *State* v. *Burlington*, 36 Vt. 521.

Second—As to the relation of master and servant. It has become equally well settled by a long and uniform course of decisions, that in cases like this, where all rights, duties and obligations are given or imposed by *general laws* operating upon *all* municipal corporations alike, and without their assent, and not for any special or private gain, advantage or privilege of the municipalities,—no such relation does exist between the corporation and the officers charged by the statute with the execution of the duties, &c., before stated. *Ball* v. *Winchester*, and other cases above cited under point II.

Where special grants or charters have been given to municipal corporations, and by such charters certain duties are imposed,—it has been sometimes held that the municipality is liable to any one

who suffers from the breach of such duties, even though such liability be not specifically created by statute.    This is on the ground that the corporation has voluntarily assumed these obligations as a consideration for the privileges conferred upon it ; in other words, has entered into a contract to perform these duties, and is placed in such respect, upon the same footing with private corporations.    The cases which recognize this liability, place it upon grounds which have no application to towns, the creation and duties of which depend upon a general law imposed upon them without their consent.    Under this principle fall the following cases cited and relied on by the defendant at the former trial :    *Bailey* v. *New York*, 3 Hill, 551 ; S. C., 2 Denio, 433 ; *Mayor of New York* v. *Furze*, 3 Hill, 662 ; *Delmonico* v. *New York*, Sanford S. C., 222 ; *Rochester White Lead Co.* v. *Rochester*, 3 Coms. 463 ; *Lloyd* v. *New York*, 1 Selden, 369 ; *Scott* v. *Manchester*, 37 Eng. Law & Eq. 495 ; *Rhodes* v. *Cleveland*, 10 Ohio, 159 ; *Sprague* v. *Worcester*, 13 Gray, 193 ; *Thayer* v. *Boston*, 19 Pick. 511. *See the full discussion of this distinction, by Perley, Ch. J., in Eastman* v. *Meredith,* 36 N. H. 284 ; *Child* v. *Boston,* 4 Allen, 41.

There is also a material distinction between the liability of even a *town* for the acts of its *officers,* like highway surveyors, who act without the control of the town and under the direction of general laws, and its liability, when it has intervened and controlled the matter by express vote, or placed it in the hands of agents specially appointed for the purpose.    In the former case, the town is not liable ; in the latter, it may sometimes be.    This distinction is recognized in *Stone* v. *Augusta,* 46 Maine, 140 ; and was a prominent element in *Lawrence* v. *Fairhaven,* 5 Gray, 116 ; and *Sprague* v. *Worcester,* 13 Gray, 193 ; which are relied upon by the defendant.

V.    But upon the plaintiff's evidence, the injury was produced by the *concurrent act or neglect of the railroad company,* and of the street commissioners.    In such cases, the law is settled that no recovery can be had against the town.    *Rowell* v. *Lowell,* 7 Gray, 100 ; *Vinal* v. *Dorchester,* 7 Gray, 421 ; *Ball* v. *Winchester, supra; Peck* v. *Ellsworth, supra.*

VI.    The evidence as to the Benns house was clearly admissible.

VII.    The cases uniformly hold that neither a town nor city is liable for the diversion or interruption of the flow of mere surface

Haynes *v.* Burlington.

water by the building, maintenance, or repair of highways. *Flagg* v. *Worcester*, 13 Gray, 601 ; *Barry* v. *Lowell*, 8 Allen, 127.

*J. French* and *E. J. Phelps*, for the plaintiff.

I. The offer to investigate the condition of the Benns building was properly excluded.

II. The charge of the court as to the liability of the defendant, was right. 1. It is a general rule that he who suffers from the breach of a legal duty by another, has an action on the case for his proper damages. 2. This rule applies to towns, as fully as to individuals, or to private corporations. Angell on Highways, § 219 to 221 ; *Thayer* v. *Boston*, 19 Pick. 511 ; *Anthony* v. *Adams*, 1 Met. 284 ; *Lawrence* v. *Fairhaven*, 5 Gray, 119 ; *Lee* v. *Worcester*, 13 Gray, 193 ; *Peck* v. *Ellsworth*, 36 Maine, 395 ; *Akron* v. *McComb*, 18 Ohio, 229 ; *Rhodes* v. *Cleveland*, 10 Ohio, 159 ; *Bailey* v. *New York*, 3 Hill, 551 ; same case, 2 Denio, 433 ; *Mayor of New York* v. *Furze*, 3 Hill, 662 ; *Delmonico* v. *New York*, 1 Sandf. S. C. 222 ; *Roch. Wh. Lead Co.* v. *Rochester*, 3 Coms. 463 ; *Lloyd* v. *New York*, 1 Selden, 369 ; *Scott* v. *Manchester*, 37 Eng. Law & Eq. 495 ; *Parker* v. *Lowell*, 11 Gray, 355 ; *Hildreth* v. *Lowell*, *ib.* 345.

3. There is a class of cases, where it is held that no private action lies against a town, or other municipal corporation, for a breach of their general duty to the public, though the plaintiff may have sustained special damages thereby. Such are *Flagg* v. *Meredith*, 36 N. H. 296 ; *Ball* v. *Winchester*, 32 N. H. 442 ; *Chadsey* v. *Canton*, 17 Conn. 475 ; *Tisdale* v. *Norton*, 8 Met. 388 ; *Smith* v. *Dedham*, 8 Cush. 522 ; *Baxter* v. *Winooski T. Co.*, 22 Vt. 114 ; *Flagg* v. *Worcester*, 13 Gray, 601. But those cases are quite distinguishable, and in general carefully distinguished by the courts that decided them, from cases like the present. The distinction made, is between actions for the breach of a general duty to the whole public, and for that of a special duty to an individual. The former are held not maintainable unless given by statute. The latter will lie at common law, as well against municipal as against private corporations. See opinion of Ch. J. PERLEY in *Eastman* v. *Meredith*, 36 N. H. p. 284, and cases above cited.

4. It is questionable whether the former class of cases could be sustained upon principle. They certainly cannot, consistently with

the views laid down by this court in the case of *Sawyer* v. *Rut. & Bur. R. Co.*, 27 Vt. 370. There is other authority against them, and much force of argument. *Wheeler* v. *Troy*, 20 N. H. 77 ; *Whipple* v. *Walpole*, 10 N. H. 130. But that is a question not necessary to discuss in the present case.

5. There is another class of cases, in which it is held that actions will not lie against towns for injuries necessarily resulting from the construction of public improvements in streets, when made in a reasonable manner, and with proper care and skill. Such injuries are said to be *damnum absque injuria*. *Flagg* v. *Worcester*, 13 Gray, 601 ; *Callander* v. *Marsh*, 1 Pick. 430 ; *Radcliff* v. *Brooklyn*, 4 Coms. 195 ; *Culver* v. *New York*, 1 Denio, 555. Against these cases even, there is much force both of reasoning and authority. By the courts of Ohio and Connecticut they are expressly repudiated. They are questioned elsewhere. Obs. of REDFIELD, J., in *Hatch* v. *Vt. Cen. R. R. Co.*, 25 Vt. 65 ; *Hasken* v. *N. H. & North. Co.*, 14 Conn. 146 ; same case, 15 *ib.* 313 ; *Denslow* v. *Same*, 16 Conn. 98 ; *Rhodes* v. *Cleveland*, 10 Ohio, 159 ; *McCombs* v. *Akron*, 15 *ib.* 474.

6. The public have no right unnecessarily to obstruct an ancient water course in its natural channel, to the ruin of the land owner, without benefit to the public. *Lawrence* v. *Fairhaven*, 5 Gray, 116 ; Angell on Highways, §§ 313, 301, 303 ; *Perley* v. *Chandler*, 6 Mass. 454 ; *Gedney* v. *Earl*, 12 Wend. 98 ; *Tanowanda R.* v. *Munger*, 5 Denio, 255 ; *Broughton* v. *Carter*, 18 Johns. 404 ; *Whitcomb* v. *Vt. C. R. R. Co.*, 25 Vt. 68.

7. That the obstruction in the culvert was first caused by the act of the railroad company, (if such was the fact,) is immaterial. *Batty* v. *Duxbury*, 24 Vt. 155, and *Duxbury* v. *The Vt. Cen. R. R. Co.*, 26 Vt. 751.

The opinion of the court was delivered by

POLAND, Ch. J. The plaintiff claimed that the water was prevented from passing off through the culvert under the highway or street, and caused to overflow his land and building, in part by reason of earth sliding down the embankment which constituted the highway over the culvert, and in part by the fill made by the railroad company in the ravine below where it was crossed by the street. The defendant claimed that the obstruction of the passage of water

Haynes *v.* Burlington.

through the culvert, and the consequent flooding the plaintiff's land and building, was wholly caused by the filling of the ravine below by the railroad company. The court instructed the jury that if the culvert was stopped in either of these ways, and the water caused to flow back to the injury of the plaintiff, he would be entitled to recover therefor against the town, if the town failed to remove such obstruction within a reasonable time after notice.

The correctness of these instructions is now before this court for revision.

And first, as to the obstruction of the culvert by the act of the town, or the street commissioners, by allowing the earth to slide down the embankment of the highway or street and cover the mouth of the culvert, at the upper end. The statute provides that " All highways shall be laid out, made, and repaired, and all damages of lands shall be paid, at the expense of the several towns in which they are located." This we consider equivalent to saying that the several towns shall build and keep in repair the highways within such towns, and that the building, and keeping such highways in repair are to be regarded as strictly corporate duties devolved upon towns. The only statute liability upon towns for neglecting to keep their highways in sufficient repair, has been held to apply only to persons who have sustained some special damage by reason of such want of repair while they were using the highway as such.

It is claimed that the liability thus imposed by statute is the only liability under which towns stand to persons who suffer special injury by reason of the neglect of the town to build their highways properly, and to keep them in proper repair. But we are of opinion that the corporate duty to build and keep in repair their highways imposes upon towns certain obligations very like those existing between the owners of adjoining lands. By the legal establishment of a highway over or through the land of the owner, the public acquire no right or interest in the soil, but only the easement to construct a way for travel upon it, and to use the way for all such part of the community as may choose to pass over it. But for this purpose the public must have the control and possession of the land thus converted into a highway, and under our political divisions of the state, the legal right or interest which the public have in the highway, is

in the town where it is situate. Such town must build the road, keep it in repair, if it is obstructed, open it, and if it is injured or destroyed by any person, they are the party entitled to redress and compensation.

In the case of an individual owner of a strip of land of suitable width for a highway, who should build a road upon it, he would by ordinary legal principles be bound to do it in a prudent and reasonable manner, and so as to avoid doing any unnecessary damage to persons owning lands adjoining. And so if such person had occasion to build his road over a natural stream or watercourse, the law would require him to provide some suitable and sufficient means for the passage of the water so that the adjoining proprietors should not suffer damage by its being obstructed. Substantially the same obligations to the owners of lands adjacent to the highway we consider are devolved upon towns in the building and maintaining their roads. In Massachusetts it has been settled in repeated cases, and is now the undisputed law of that state, that in all cases where a highway, turnpike, bridge, town way or other way, is laid across a natural stream of water, it is the duty of those who use such franchise or privilege, to make provision by open bridges, culverts, or other means for the free passage of the water, so that it shall not be obstructed and pent up to flow back on lands belonging to the riparian proprietors. And it is their duty not only to make such bridge, culvert or passage for water, but to keep it in such condition that it shall not obstruct the stream. *Rover* v. *Granite Bridge*, 21 Pick. 344; *Lawrence* v. *Fairhaven*, 5 Gray, 116; *Perry* v. *Worcester*, 6 Gray, 544; *Parker* v. *Lowell*, 11 Gray, 353; and in several other cases. But in Massachusetts, no statute exists imposing any such duty specifically upon towns, any more than in this state. In the multitude of cases called to our notice on the argument we have discovered none denying such duty and liability upon towns.

And a contrary doctrine allowing towns to dam up and obstruct running streams by their highways, to the great injury, and perhaps absolute ruin of the adjoining owners, without compensation or liability, would be too monstrously unjust to be tolerated for a moment, and the unvarying practice and usage on the subject since the state was settled, show how the law has always been understood.

If anything more was needed on this point, the careful provisions of our statute, providing that before the course of any stream shall be changed for the accommodation of a highway, notice shall be given and, compensation made for all damages thereby occasioned, are ample to show how the rights of the public, and of individuals, are understood relative to those rights to the natural flow of water. When the highway or street in question was built, a culvert of ample dimensions was placed under it, which for many years sufficed for the passage of all the water through it. The plaintiff's testimony tended to show that by the action of the highway surveyors, and street commissioners of the town, from year to year, in raising the grade of the street over the culvert, the earth washed and slid down so as to enlarge the base of the embankment so much as to finally cover the mouth of the culvert and prevent the water from passing through. It is contended for the town that for any obstruction of the culvert thus caused, the town is not responsible, upon the ground that what was thus done by the highway surveyors and street commissioners, was done by them in the exercise of their official duty as public officers, whose appointment and duties are regulated by general laws, and that they were not the agents of the town in any such sense as to make the town liable for any damages caused by their negligence in the manner of performing their duty.

We are not prepared to hold that such officers in the performance of their official duty, do sustain to the town the ordinary relation of private agents to a principal, so that the town would be liable to any person who might be injured by their acts of negligence committed in the performance of their duty. For instance, if a highway surveyor in repairing a road in pursuance of his general legal duty, should negligently and carelessly undermine a wall or building, we think the town could hardly be made liable to an action therefor. But in the present case there hardly seems to have been any negligent act by any of these officers. The raising and widening of the street is conceded to have been proper, and it does not seem that the immediate consequence was that the culvert was thereby stopped. That was produced by the effect of the elements upon the embankment, causing the earth to wash and slide down and gradually to enlarge the width of the embankment at the base, until the opening of

the culvert was covered. The real ground of difficulty appears in not having extended the length of the culvert to correspond with the increased width of the embankment. It seems at least very doubtful, whether in any thing that was done by those officers there was any such unlawful or negligent conduct whereby the plaintiff was injured, as would have made them liable. But if there was, and the culvert was thereby obstructed, and the town neglected after reasonable notice to remove the difficulty, we are of opinion they would be liable, upon the ground already stated, that it is as much their duty to keep and maintain a sufficient passage for a natural stream, as to provide for it, when they originally made the road. And so if their officers neglected to extend the culvert to correspond with the increased width of the embankment, it was the duty of the town to cause it to be done by some other means.

Upon the facts which the plaintiff claimed to have established in reference to this part of the case the court below correctly held that the town were liable to the plaintiff for the damages thereby caused.

The town claimed that the plaintiff's damages were wholly caused by the act of the railroad company in filling up the ravine below the street. The plaintiff conceded that his damages were in part produced by this act of the railroad company. Were the town properly held liable for the damages thus caused? The railroad company had filled the ravine below for twenty rods in length to a great depth. But the railroad company owned the land, and had a lawful right thus to fill it up, provided they secured proper means for the proper escape of the water that had its natural channel down the bottom of the ravine. To do this the company extended for the whole distance under their deep fill, a wooden culvert connected with the stone culvert under the highway, through which the water passed off. But this culvert being made of perishable materials, decayed and fell in, so that the embankment became a solid one, and no passage was left for the water. The inevitable effect of this was to prevent the water from flowing through the culvert under the highway, and apparently this must have been the great cause of the damage sustained by the plaintiff. The court held that it was the duty of the town to remove the obstruction thus created, and restore the natural flow of the water through the culvert under the highway.

We are not prepared to say but that if an obstruction to the passage of the water through the town culvert had been placed in it by a third person, without the knowledge of the town or its officers or agents, that the town might not be liable for the damages caused by such obstruction, after they had notice of it, and a reasonable time to remove it. But the railroad company had made this extensive deposit of earth on their own land, and by allowing their culvert to become destroyed, it stood the same as if they had made no culvert originally. It is impossible for us to see upon what legal or just ground the town can be called upon to remove this fill upon the land of the railroad company, or to maintain a culvert under it. If the railroad company had erected a dam across the ravine ten or twenty rods below the street, and thereby raised the water so as to flow back through the culvert upon the plaintiff's land it would have been the same thing, but it would hardly be claimed the town would be bound to remove the dam or be answerable to the plaintiff for the consequences of it. The plaintiff's claim as to this, is much like allowing the land owner, whose land is flowed by a dam improperly erected, to recover his damages of an intervening owner between his land and the dam. The plaintiff has as much right, and is as much bound, to proceed against the railroad company to remove the obstruction, as the town, and the remedy is as ample to him, as to the town. Nor can we see why the railroad obstruction would not be equally injurious to the plaintiff if the town road and culvert were not in existence. The act or neglect of the railroad company in stopping the flow of the water of the stream was unlawful as to the town, and unlawful as to the plaintiff, and either was entitled to a remedy against them for any damage caused by it, but we do not see how it was any more the fault of the town, than of the plaintiff. See *Peck* v. *Ellsworth*, 36 Maine, 393.

As to this branch of the case we think the direction of the court was erroneous.

The rejection of the evidence as to the Benns house walls having cracked by the action of the frost, was correct. If the evidence of the action of the frost on the walls of other buildings was admissible at all, it does not appear that the location and surrounding conditions of these two buildings were so similar that one would be any fair

test for the other.　The point now made as to the division of the damages between those occuring before and those after, the expiration of a reasonable time to remove the obstruction, does not appear to have been made at all in the trial, so that if there was any ground to ask it (which seems very doubtful) it is too late to make it here. The charge on the subject of damages seems to have been substantially what the defendant requested.

Judgment reversed and cause remanded.