### Alan and Emily GRAHAM v. TOWN OF DUXBURY

[787 A.2d 1229]

No. 00-063

November 5, 2001. Defendant Town of Duxbury appeals a superior court order finding the Town negligent by failing to repair damage to property owned by plaintiffs Alan and Emily Graham caused by excessive water runoff. The Town claims it was not negligent and is immune from liability under the common-law doctrine of sovereign immunity for municipal governmental actions. We agree and reverse.

The Grahams' property was once part of a larger parcel of land with steep slopes and shallow soils owned by Clyde Morse. When Morse subdivided the property in 1989, he designed and constructed a road, now called Morse Road, which passes the Grahams' lot. Morse Road rises in elevation as it goes from east to west.[1] To drain Morse Road and its surrounding area, Morse constructed a ditch on the southern side of the road leading to a culvert under the road. The culvert crosses Morse Road and emerges on its northern side on what is now the Grahams' lot, the second highest lot on that side of Morse Road. Several other lots exist further down the road from the Grahams. On the Grahams' lot, Morse built a rip rap-lined swale where the culvert emerged. The swale runs away from Morse Road down to an embankment with a steep 40% drop off to a stream at the bottom. The culvert and swale were intended to protect Morse Road from surface water runoff by diverting it to the stream in the back of the Grahams' property.

The design for Morse Road was reviewed and approved by the State of Vermont Agency of Transportation. The Town of Duxbury took over Morse Road as a Class 3 town road after Morse obtained all necessary permits. The Town has maintained the road, the culvert, and the ditch since that time, but has never performed any maintenance on the swale located on the Grahams' lot.

At the time the Grahams purchased their property, the swale was visible. Also visible were the gravelly and unstable soils on the rear of the property. In fact, Morse had once used the property as a gravel pit.

The events in issue occurred on August 7, 1997 when there was a very heavy downpour that washed out part of Morse Road. The downpour also eroded away a large chunk of the bank on plaintiffs' land where the water left the swale and plunged down to the stream. It left a canyon-like gully emanating from the swale.

After discovering the erosion, Emily Graham contacted the chair of the Town's selectboard, who promised to inspect the problem and have the culvert cleared. The Town cleared sand from the culvert the next day, although it is not clear that the condition of the culvert caused the erosion on the Grahams' property.[2] The Town took no action to repair or revise the original drainage system Morse had designed and constructed. The Grahams then sought professional assistance to help prevent

---

[1] We have simplified the directions to make the facts easier to comprehend.

[2] In their complaint, plaintiffs claimed that the erosion was caused when the culvert became plugged and the water flowed over the Morse Road into the swale. The trial court found that the culvert did become plugged, but also that no one saw water flow across Morse Road into the swale. Plaintiffs admit in their brief that the condition of the culvert had nothing to do with their damages.

further erosion on their property, as well as the threat of future erosion to neighboring properties and to Morse Road, and eventually took action on their own, expending $14,289 to revise the drainage system on their property.

In April 1998, the Grahams filed a claim against the Town of Duxbury in Washington Superior Court seeking to recover their expenditures to address the drainage problem, as well as other unspecified damages. After a bench trial, the court concluded that the Town was not negligent as of August 7, 1997 because it had no notice prior to that date that the drainage system would cause damage to private land during periods with strong surface water runoff. The court noted that the Town had no reason to know of any problems with the system's design because the system had state approval and had worked as intended for years previously. Nevertheless, the court concluded that the Town was negligent by failing to take corrective action after the Grahams notified the Town of the damage to their property. The court rejected the Town's claims that it was immune from liability under common law municipal or sovereign immunity, and that the Grahams failed to avail themselves of a statutory remedy under 19 V.S.A. § 985, which the Town contends governs their claim. The court awarded the Grahams the erosion control expenses they incurred, plus interest. The Town of Duxbury subsequently appealed.

In its appeal, the Town presents three arguments to this Court: (1) sovereign immunity completely bars the Grahams' claim; (2) even if sovereign immunity does not bar recovery, the Town has no duty to pay for the repairs to the drainage system located on the Grahams' property; and (3) 19 V.S.A. § 985 was the Grahams' only avenue of relief, and they failed to avail themselves of it. Because the Town challenges only the court's legal conclusions and not its factual findings, our review is plenary and nondeferential. *Maciejko v. Lunenberg Fire Dist. No. 2*, 171 Vt. 542, 543, 758 A.2d 811, 813 (2000) (mem.). If the trial court misapplied the law, we will correct that misapplication on review. *Bolduc v. Coffin*, 133 Vt. 67, 69, 329 A.2d 655, 656 (1974).

Municipal sovereign immunity is a common-law doctrine which dates back to the mid-1800s in Vermont. *Hillerby v. Town of Colchester*, 167 Vt. 270, 272, 706 A.2d 446, 447 (1997). It protects municipalities from tort liability in cases where the municipality fulfills a governmental rather than a proprietary function. See *id*. Building and maintaining streets, and the accompanying drainage system, are generally government functions, and no liability for injuries suffered as a result of such activities may attach. See *Dugan v. City of Burlington*, 135 Vt. 303, 304, 375 A.2d 991, 992 (1977) (street); see also *Sanborn v. Village of Enosburg Falls*, 87 Vt. 479, 482, 89 A. 746, 747 (1914) (drainage system for street). Thus, maintaining Morse Road and its drainage system is a government function protecting the Town of Duxbury from any damages caused by its negligence in so doing. Unless there is some exception to the Town's immunity in this case, the Grahams may not recover damages from the Town.

Our precedents set forth an exception to municipal immunity in circumstances where a town fails to repair a culvert necessary to allow a natural stream to pass unimpeded under a public roadway after notice that the culvert is not functioning as intended. *Haynes v. Town of Burlington*, 38 Vt. 350, 362 (1865). That exception to municipal immunity flows from the town's duty to "maintain a passage for a natural stream" because it has "no implied authority to dam up or otherwise obstruct natural water courses." *Sanborn*, 87 Vt. at 482-83, 89 A. at 747. If a town does not repair a passage constructed for a natural stream after receiving notice that the passage is

blocked, municipal immunity will not bar recovery for damages caused by the town's failure to take remedial action. *Haynes*, 38 Vt. at 362.

Although a town may be liable for subsequent damage to surrounding property after receiving notice of a problem concerning a natural stream, towns remain immune from liability where the damage complained of is caused by negligently maintained surface water drainage systems installed to protect the town's roads. *Sanborn*, 87 Vt. at 484, 89 A. at 747. We have not abandoned that distinction. *Sargent v. Town of Cornwall*, 130 Vt. 323, 327-28, 292 A.2d 818, 821 (1972).

The trial court questioned the modern desirability of a distinction between a stream and runoff water, pointing out that it can be difficult to distinguish one from the other. We note that courts in other jurisdictions have generally treated diffuse surface water (runoff water) differently from other surface water. See generally 2 R. Beck (ed.), Waters and Water Rights § 10.03 et seq. (1991 ed. 2000 replacement vol.) (describing the law of diffuse surface water). We decline to revisit the distinction on this record. Under *Sanborn*, the Town in this case was immune from any liability for damage to the Grahams' property because the drainage system at issue protected Morse Road from water runoff. There was no allegation or finding that a natural stream caused the Grahams' damages as required by *Haynes*.

Even if the trial court were correct that there was no immunity because *Haynes* controlled here, it misapplied *Haynes* and proceeded to fashion a new standard for negligence. The trial court found that the Town had no reason to know that the drainage system at issue may not be able to handle strong water runoff and thus was not negligent any time prior to the date the Grahams discovered the erosion near the swale. The court then concluded that the Town

was negligent for failing to take remedial action after it had notice of the problem on the Grahams' property and after the damage had already been done. In essence, the trial court found that if another similar runoff occurred as a result of a large rain storm, the Town would be negligent and liable for any further erosion. Thus, it required the Town to pay for corrective action in anticipation of further damage.

Liability for negligence requires some showing of harm proximately caused by the defendant's breach of duty, however. See *Rubin v. Town of Poultney*, 168 Vt. 624, 625, 721 A.2d 504, 506 (1998) (mem.). The only actual harm demonstrated in this case was the harm for which the court concluded the Town was not responsible. The trial court's conclusion that the Town was negligent by not taking steps to prevent harm that has not yet occurred, or may never occur, was erroneous. It is not saved by the Grahams' argument here that the erosion would eventually undermine Morse Road. The Town is free to choose a method, if any, for dealing with that possible threat to its road.

The Grahams urge that we affirm on the theory that the erosion constituted a taking by the Town without just compensation. They did not include this claim in their complaint. Although they referenced such a theory earlier, they never squarely raised it until their closing argument following the close of the evidence. The Town objected to the introduction of the theory as coming too late. The trial court rejected it summarily, and the Town again objects to it being raised here. We agree that the claim was not properly raised below. See *Limoge v. People's Trust Co.*, 168 Vt. 265, 274, 719 A.2d 888, 893 (1998).

The Town also challenges the trial court's conclusion that 19 V.S.A. § 985(a) does not apply to the Grahams' claim. In light of our reversal on municipal im-

munity and negligence, we do not need to reach this claim and decline to do so.

*Reversed.*