Filed 04/27/26

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 22-CV-03818

| Georgia Moody v. The City of Montpelier |
| --- |

# ENTRY REGARDING MOTION

**Title:** Motion for Summary Judgment (Motion: 6)
**Filer:** Brian P. Monaghan
**Filed Date:** October 01, 2025

The motion is GRANTED.

The present matter comes to the Court on the eve of trial. Plaintiff seeks monetary damages related to injuries resulting from a fall she suffered in the City of Montpelier. Plainitff was crossing State Street in a duly marked crosswalk when her foot got caught in a depression in the pavement causing her to fall and break the ankle. It is not disputed that the depression in the pavement occurred around a water valve box owned and operated by the City of Montpelier and embedded in the roadway.

In its motion for summary judgment, the City of Montpelier raised two arguments concerning the sufficiency of the evidence and the doctrine of municipal immunity. After careful review of the parties' filings and the record, the Court concludes that Plaintiff has sufficient evidence of breach of the City's duty to monitor and repair its crosswalks, but the Court concludes that the key duties involved are exclusive to the City's road department and are governmental actions, which entitle the City to municipal immunity. Based on this conclusion that municipal immunity applies to the City's liability, the Court determines, pursuant to V.R.C.P. 56, that Defendant City of Montpelier is entitled to Summary Judgment in its favor.

*Factual Record*

For the purpose of summary judgment, the Court finds the following facts to be undisputed.[1]

On October 29, 2021, during daylight hours, Plaintiff Georgia Moody entered the public crosswalk on State Street in Montpelier, Vermont at the intersection with Taylor Street. From the record, the Court understands that she was crossing on the east side of Taylor Street, heading south across State Street. Approximately halfway into the crosswalk, Ms. Moody stepped into a

---

[1] The City has included a claim of comparative negligence in its answer, but for purposes of the present analysis, this defense and the facts related to it are not material to Defendant's motion and will not be reviewed in this decision.

1

depression that had formed around a water valve box, embedded in the pavement, and fell. She was unable to stand up after this fall. She was carried by others to the sidewalk. An ambulance arrived, and she was taken to the hospital where doctors determined that the fall broke her right ankle.

Ms. Moody filed the present action on October 28, 2022 alleging negligence against the City of Montpelier. In her complaint, Ms. Moody alleges that the City "had a duty to the public in general, and Plaintiff in particular, to keep the crosswalk at Taylor and State Street in a condition that was reasonably safe for people using that crosswalk." Pltf. Complaint at ¶ 6. Plaintiff alleged that the City "breached that duty by causing and/or permitting the aforementioned crosswalk to become dangerous and hazardous to persons using it, by failing to adequately maintain and/or repair the crosswalk." *Id*. at ¶ 7. Plaintiff alleges that the City "created" the dangerous and hazardous conditions and knew or should have known that they existed if they had "exercised reasonable care and due diligence." *Id*. at ¶ 10.

As a preliminary matter, the City objects to the admissibility of Plaintiff's Exhibit 1, a photograph purported to be an image of the water valve box at the time of Ms. Moody's fall. The Court agrees that the photo, by itself, is not self-authenticating, and there is no affidavit in Plaintiff's filings that would provide sufficient foundation to consider the photo as a true and accurate representation of the scene at the time of Ms. Moody's fall. As such, the Court will not consider exhibit 1 as part of its review of the record. *Gates v. Mack Molding Company, Inc.*, 2022 VT 24, ¶¶ 13, 14 (noting that the determination of material facts rests upon admissible evidence, such as affidavits or other evidentiary material); see also *Openaire, Inc. v. L.K. Rossi Corp.*, 2007 VT 120, ¶ 14 (affirming trial court's consideration of an exhibit properly supported by an affidavit).

Giving all reasonable inferences to the non-moving party, it is disputed whether the City had notice of the depression in the pavement at the time of Ms. Moody's fall. The City cites Director of Public Works Kurt Motyka's deposition testimony to show that he and his office were unaware of the defect at the time of the incident and that no one from the public had reported it. Ms. Moody, however, makes a circumstantial case for constructive knowledge on the City's part by pointing to testimony by City employees that: (1) they regularly repaired similar depressions created in the pavement; (2) they had regularly travelled past this intersection, multiple times before Ms. Moody's fall; (3) the City had conducted a careful review of the area in preparation for both the annual Governor's Corporate Cup race the prior May and the City's 4th of July parade; and (4) the City had conducted street painting of the crosswalk in August.[2] To this, Plaintiff ties expert opinion testimony that the depression most likely arose

---

[2] These last two facts are included to show that the City conducted some type of systematic review of the area or performed such work that they should have known that the depression existed. The Court recognizes that the City will likely point to these facts as well to demonstrate that any defect at the site was not obvious and apparent at that

during the freezing and thawing of the street over the prior winter. From these facts, Plaintiff urges the Court to draw an inference that City employees had constructive knowledge of the crosswalk's condition, which, in turn, should be attributable to the City.[3]

Plaintiff also contends there is an issue of material fact as to who would have been responsible for repairing the defect in the crosswalk.[4] The record, while complicated, is not in reasonable dispute. The depositions of the City employees indicate that the water valve box, itself, was the responsibility of the water department, and repairing or re-seating it was that department's responsibility. It was the road department's responsibility to do emergency patching and repairs, which might include paving over the box to create a level surface until the water department could come out and perform the larger repairs. As City employee, Dan Perry, described in his deposition:

> Q. Would this [depression around a water valve box] be the type of thing that the Street Department would repair?
>
> A. In an emergency circumstance, yes, but, generally, it would be referred to the Water Division.
>
> Q. Okay. So, if you had seen this condition, you would have done what?
>
> ATTORNEY MONAGHAN: Objection.
>
> A. We would have filled it in, took it as a trip hazard.
>
> Q. Okay. And how would you have filled it in?
>
> A. On a temporary basis, we'd at least taken away the trip hazard by putting cold patch over it and compacting it.

---

time. For purposes of summary judgment, and in light of the City's arguments, the Court will focus on the reasonable inferences from these facts that concern Ms. Moody's arguments.

[3] This knowledge is different than a responsibility on the part of the employees or an allegation of direct liability against the employees. As established in her complaint and confirmed at the April 13, 2026 hearing on the present motion, Plaintiff is not premising her negligence claim on a duty owed to her by any individual officer or employee of the City, and none of Plaintiff's filings invoke either these claims or the provisions of 24 V.S.A. § 901(a) to distinguish her clams. See *Hudson v. Town of East Montpelier*, 161 Vt. 168, 175–76 (1993) (discussing the distinction in public employee liability to the public at large from general municipal liability). Plaintiff's single negligence claim in her complaint only lies against the municipal corporation for its alleged failure to maintain and/or repair. As such, the Court's analysis of both the factual and legal issues in Defendant's motion will focus only on the issue of municipal liability and the doctrine of municipal sovereign immunity. *Compare Town of South Burlington v. American Fidelity Co.*, 125 Vt. 348, 350 (1965) (municipality is immune from suits concerning "insufficiencies in streets and sidewalks" under municipal sovereign immunity), *with Civetti v. Turner*, 2020 VT 23, ¶¶ 14, 15 ("We conclude that § 901(a) amounts to a waiver of municipal immunity, essentially placing the Town in the shoes of its municipal officers, armed with the defenses available to those officers.").

[4] While there is some complication in this review due to the fact that the City's water and road departments both fall under the Department of Public works, the deposition testimony of Eric Chase, Dan Perry, Adam Willis, and Kurt Motyka provide a relatively consistent and clear delineation between the two sub-departments and their respective areas of responsibility.

Q. Okay. And then would you notify the Water Department or Water and Sewer Department?

A. Yes.

D. Perry Depo. at 7. A little later in the deposition, Mr. Perry goes on to note:

Q. Okay. And what, what did you learn?

A. The water valve box has a sleeve on it, so it's made to adjust as the ground freezes and rises and retracts with thawing, and as the cast iron over the years welds to itself, the box does not adjust with the surface of the road. So, when the road freezes and rises, the valve box stays down. It tends to deteriorate the asphalt around the outside because there's an outer lip to hold it in place which makes the asphalt ragged and then over time it falls out.

Q. And is that something that you would inspect for or just as it's seen it would be dealt with?

A. As it's seen, it's dealt with.

Q. Okay. So, would the issues that caused the problem develop over the wintertime?

A. Once the sleeve fails the problem that occurs with the valve box happens throughout the winter and into the spring when the thawing happens.

Q. And do you know if the deterioration is exacerbated by precipitation and then cars driving over it?

A. So, over a series of years when we do asphalt, you know, trying to prolong the life, sometimes they get crack sealing done around them which would hold it together and then throughout bad weather, rain and sloshing puddles, though it could be after the spring it could loosen that all up and make it fall out later than just the spring or in the winter.

(*A discussion was held off the record.*)

Q. So, do you ever make repairs to the valve box itself?

A. The Street Department? No.

Q. Have you ever been present when the water/Sewer Department has made repairs to a valve box area in this condition?

ATTORNEY MONAGHAN: Objection.

A. Yes.

Q. Okay. And what do they do?

4

A. They will start by cutting the asphalt around it and see if it will raise up to bring it back to grade and then at that point if the valve—the actual sleeve moved, they would reset it and hot mix around it so you have a flush surface.

Q. Okay. In this photograph does this look like something that can be reset in that manner?

A. You have to physically dig it out so you have access to the lip around the ring to see if the sleeve moves. So—

Q. Okay. So, there's no way to tell from this photograph?

A. Correct, yes.

*Id*. at 9–11.

In this respect, there is a distinction between (1) how the water valve box is installed and repaired when it is determined to be improperly seated from (2) the emergency repair work when the movement of the box against the pavement creates depressions and sinks outside the valve box. The Court understands, particularly based on Dan Perry's deposition, but consistent with that of Plaintiff's expert witness, George Melchior, that the water department is responsible for installing and repairing the box, which would include repairs to the surrounding pavement required as part of such work, but the road department is responsible for spotting issues, performing emergency repairs, and maintaining the street surfaces in general.

### *Evidence of Causation*

The record in this case does not indicate a single, initial cause of the depression around the water valve box. There are at least three potential theories outlined in the depositions, affidavits, and evidence. First, the City, through its interrogatory responses, contends that the depression was the result of a missing cover to the water valve box, which was replaced as soon as the City became aware that it was missing.[5] Second, there is the testimony of various City employees that such damage was consistent with normal wear and tear of the system related to events where the metal of the box, for various reasons, does not move with the ground shifts during freeze/thaw cycles and disrupts the surrounding pavement. Third, there is the affidavit of

---

[5] Plaintiff attempts in her Statement of Undisputed Facts to create a factual dispute about this theory by contending that, contrary to the City's position, Mr. Perry testified that the water valve box had its cover intact. This line of argument, however, mischaracterizes the City's interrogatory response and conflates it with Mr. Perry's identification of a photo in his deposition. Assuming the photo Mr. Perry saw does portray a water valve box with an apparent cover, neither in this motion, nor in Mr. Perry's deposition, has it been identified when the photo was taken or when the cover was placed on the box. Moreover, the City's interrogatory response was to the question of what caused the depression, not whether the picture conveyed the conditions at the time of Ms. Moody's fall.

Plaintiff's expert, George Melchior, who opines that the pavement failed due to an initial failure to install a protective concrete support around the metal.[6]

While this would normally require putting the matter to a finder of fact, there is an important distinction between the three that the Court is obligated to review. The first two theories posit a cause of the depression associated with either an accident or normal wear and tear. If proven, then the sole allegation of negligence would rest with the City's response to the depression, its failure to review and to repair. If, however, the third theory is, in fact, considered, then the negligence analysis shifts to two fronts, a negligent installation causing a hazardous situation and a subsequent failure to review and repair. For reasons that will be apparent in the immunity analysis below, the Court must examine this theory of causation to determine if the negligence lies in a failure to inspect and repair, or in the installation of the valve box in the first place.

Looking at Mr. Melchior's theory, it does not present any evidence, beyond a conclusory statement, linking the failure of this water valve box to any specific events or analysis. Starting with his description, Mr. Melchior's total testimony regarding this theory is limited to the following two sentences out of his 18-paragraph affidavit:

> 5. These [factors] include the construction of the water valve and valve box cover, the placement of the water valve and valve box cover, and the failure to timely inspect it for leaks or anticipate and effectuate its replacement before it leaked.
>
> 6. More specifically, any remote operating valve box and/or similar structure placed in a high vehicle traffic area must be adequately supported to resolve cyclical vehicle loading, which is typically done by putting a concrete structure around the steel valve body.

Melchior Aff. at 2. This disclosure is the nearly the exact same language as Plaintiff uses in her Expert Disclosure as well as paragraph 41 of Plaintiff's 42-paragraph Statement of Undisputed Material Facts, which are the only other areas of the record where any negligent installation is mentioned.

There are several problems with analyzing Mr. Melchior's opinion regarding negligent installation for the purpose of summary judgment. Melchior's statement does not provide a basis for the specific installation standard. Melchior opines that a valve box in a high vehicle traffic area must have a concrete structure around it, but it is not clear if this is a professional standard or a subjective one. It is also not clear how this standard should be applied. Melchior's affidavit does not explain how the concrete support would have changed the outcome in the present case.

_____

[6] Mr. Melchior's broader opinion is that the accident had a number of causes, primarily the City's failure to spot and repair the depression. In this respect, the Court understands Mr. Melchior's analysis to encompass both the initial depression formation as well as the City's subsequent failure to spot and repair the depression.

In this respect, it is unclear what part of the valve box failed or what caused the pavement around the valve box to fail. Melchior's opinion offers neither facts nor analysis on this point as to how a concrete support would have prevented the pavement depression from occurring in this particular case. Third, Melchior's opinion does not indicate when or how concrete supports should have been installed. Is it the standard of reasonable care that all such valve boxes in the City or any other high traffic areas should be replaced? If they are not replaced, is it Mr. Melchior's opinion that the City is per se negligent anytime there is a valve box issue?

These problems highlight the primary issue with Mr. Melchior's negligent installation opinion. It is conclusory and lacks sufficient factual support or any explanation apart from a cursory determination of fault. As the Vermont Supreme Court has noted: "If an expert presents 'nothing but conclusions—no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected, such testimony will be insufficient to defeat a motion for summary judgment.'" *Morais v. Yee*, 162 Vt. 366, 371–72 (1994) (quoting *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) (internal citations omitted); see also *Cobb v. Gibson*, 2002 WL 34422469, at *2 (June 1, 2022) (unpub. mem.). In this respect, the only reasonable read of Mr. Melchior's opinion is as a statement of general resiliency for water valve boxes to wear and tear. In this case, Mr. Melchior does not suggest that the additional installation provisions would have prevented such issues altogether, or that it would have prevented the specific depression, which predicated Plaintiff's fall. This is because he does not point to places in the record that would provide the necessary details that would link his general point (valve boxes with concrete supports last longer than those without) with the specifics of the present case. Therefore, to use Mr. Melchior's opinion to graft some type of negligent installation claim onto Plaintiff's failure to repair and maintain claim would require, based on the present record, a jury to engage in speculation. *Caldwell v. Champlain College, Inc.*, 2025 VT 17, ¶ 7 (citing *Boyd v. State*, 2022 VT 12, ¶ 19). This is impermissible, and the Court will not read Plaintiff's filings to create a theory of negligent installation where one does not appear.

The evidence in the record indicates that the pavement around this box deteriorated, creating a depression around the box. It is disputed as to when the depression began. Plaintiff claims early spring. The City contends, later. It is not known when the water valve box was installed or was last repaired before Ms. Moody's incident.[7] It is also disputed what specifically about the water box caused the depression. Nevertheless, the evidence is sufficient to show that the water valve box belonged to the City, and that the City had the sole responsibility to monitor and repair the street if there was a problem with the valve box. Going any further than this, however, is simply unsupported, and it is insufficient as a matter of law to support any claim beyond the negligence claims arising from the duty to inspect and repair.

*Legal Analysis*

---

[7] Separate and apart from the depression that formed sometime in 2021 before Ms. Moody's October fall.

7

Defendant's first argument is that the evidence is insufficient to establish the element of breach in Plaintiff's claim. In making this argument, the City recognizes that it has a general obligation "to use reasonable diligence to maintain its roads in a reasonably safe condition for the uses for which they were established." *Lane v. State*, 174 Vt. 219, 227 (2002). Further the crosswalk is part of the roadway to which this obligation extends. 23 V.S.A. § 4(7)(A) (defining crosswalk as part of the roadway). Plaintiff can also point to admissions by City personnel who agree that if the City had been aware of the depression, it would have sought to repair it in short order. For the purpose of the present motion, the City also does not contest that Ms. Moody was injured and that the injury resulted from her foot falling into the depression around the water valve box in the crosswalk. The City's first argument for summary judgment focuses on the issue of breach and the amount of notice that the City had of the situation. The City correctly notes that the duty to repair is not triggered until the City has either actual or constructive notice of the issue and a reasonable time to repair it. *McCormack v. State*, 150 Vt. 443, 445–46 (1988).

Based on the record before the Court, there is no evidence that the City had actual knowledge of the defect in the crosswalk. While Plaintiff suggests that the City employees who travelled over or inspected the roadway knew of the defect, there is simply no proof that they did. Nor does Plaintiff offer evidence that anyone reported this defect to the City prior to Ms. Moody's fall. The fact that the City travelled across and conducted reviews and painting activity over the roadway where the defect lay does not, in and of itself, indicate actual knowledge.

Rather than actual knowledge, Plaintiff's evidence, with all reasonable inferences drawn in her favor, builds a circumstantial case that the City had constructive knowledge of the defect based on the likely length of time the defect existed and the City's work in the area. To this extent, the evidence that Plaintiff can offer, based on the record before the Court, is that the defect in the road was related to temperature fluctuations in the road that pushed the pavement away from the fixed position of the water valve box. This is supported by the depositions of Dan Perry, an employee of the City, and George Melchior, Plaintiff's expert in the more expansive portions of his affidavit. While the City has disputed some of these facts, the evidence is sufficient to create a potential timeline for the defect that begins no later than the spring of 2021.

Given that Ms. Moody's fall occurred in October, she contends that this defect, which lay on the surface of the road in the crosswalk had existed for several months. If a jury accepted this testimony as credible, it would mean that the depression around the water valve box had laid on the surface of the roadway in an open and apparent manner for a sufficiently lengthy amount of time that it would be reasonable to find that the City should have known about its condition.

The Court will also take judicial notice that State Street is a major thoroughfare in the City of Montpelier. The crosswalk where the incident occurred is at the intersection where the State's Pavillion Office Building sits (which houses the Attorney General's Offices and the

Governor's offices) and lies within a few hundred feet of the rest of the capitol complex. Additionally, Plaintiff can point to several work orders where City employees and contractors, working at the City's direction, scrutinized the roadway in the months prior to Ms. Moody's fall, including the months of May, July, and August. Each of these reviews should have discovered the defect, and as the City admits, started the process to address and repair it. While the testimony of the City may ultimately be that no defects were found at that time, this testimony is not before the Court, and even if it was, it must be weighed by the finders of fact in comparison to the likely testimony described above, and inferences drawn from it.[8]

For the purposes of the present motion, the Court must draw all reasonable inferences from the record in favor of the non-moving party, Ms. Moody. *Powers v. Hayes*, 172 Vt. 535, 536 (2001). In this case, Plaintiff has made a circumstantial case that the depression was created no later than the spring of 2021 and that the City, because of the depression's location and the City's review, should have discovered it. If a jury finds these facts, then Plaintiff can look to the testimony of City's Public Works Director that the City should have quickly filled in the hole in such a high traffic area as sufficient evidence that the City breached its duty to repair the roadway within a reasonable period of time based on its constructive knowledge. Therefore, the City's Motion for summary judgment on the sufficiency of evidence concerning the breach issue is **Denied.**

### *Municipal Immunity*

Defendant's second argument focuses on the issue of municipal immunity. The doctrine of municipal immunity has a long and convoluted history. Unlike the more straightforward Tort Claim analysis that parties pursue when a claim is made against the State,[9] municipal immunity is a creature of the common law, and in Vermont carries a unique interpretation of the classic governmental/proprietary distinction. *Hillerby v. Town of Colchester*, 167 Vt. 270, 272–73 (1997); see also *Belter v. City of Burlington*, 2025 VT 35, ¶ 24. The distinction that these cases draw are between governmental functions that benefit the general public (roads, sidewalks and other generally available public services) and proprietary functions that benefit a limited group of people or just the residents of the municipality. *Belter*, 2025 VT 35, at ¶ 24.

This doctrine has been criticized by the Vermont Supreme Court, but it has not been abandoned or altered. *Hillerby*, 167 Vt. at 276 ("Our refusal to abolish the governmental/ proprietary distinction should not be read as an endorsement of that distinction."); see also *id*. at 276–94 (dissenting opinions from Justice Dooley and Justice Johnson advocating for the

---

[8] The Court will note that there is no evidence that the defect was addressed by a patch or other remedy that failed. The City's position is simply that it did not know the defect was there, which in the absence of any other evidence, provides the lane for Plaintiff's circumstantial case to pass through to the fact-finder.

[9] See, e.g., *Sutton v. Vermont Regional Center*, 2019 VT 71A, ¶¶ 22, 35–43, 69, 72 (discussing the Vermont Tort Claims Act and its partial waiver of sovereign immunity for non-discretionary actions across a variety of negligence and fraud claims).

abandonment or modification of the governmental/proprietary distinction); *Civetti*, 2020 VT 23, at ¶11 ("While we will not uncritically perpetuate common-law precedent for its own sake, we continue to believe that the Legislature is best suited to balance the competing considerations at play in reevaluating municipal immunity"); *Lorman v. City of Rutland*, 2018 VT 64, ¶¶ 10, ("It remains true, however, as we indicated in *Hillerby*, 167 Vt. at 276, 706 A.2d at 449, that it would be beneficial for the Legislature to act in this area."); *Morway v. Trombly*, 173 Vt. 266, 270 (2001) ("While acknowledging the need to reform the rules of municipal liability in Vermont, this Court has determined that the Legislature is better suited, because of its fact-finding and problem-solving process, 'to fashion a more reasonable and workable doctrine.'" (citing *Hillerby*)).

The reason for the Court's qualms with municipal immunity could not be more plainly shown than the present case. To the extent that the defect in the crosswalk is a road department issue, and as a result, an issue involving the building and maintaining of streets, then the matter is a governmental function, and no liability to the City may attach. *Civetti*, 2020 VT 35, at ¶ 9 (citing *Graham v. Town of Duxbury*, 173 Vt. 498, 499 (2001) (mem.)). Yet, to the extent that the defect is a water department issue, it is a proprietary function that is not entitled to municipal immunity and to which liability may attach. *Boguski v. City of Winooski*, 109 Vt. 380, 389 (1936). Given the overlapping roles that each of these departments play in managing the City's roads and infrastructure, the analysis comes down to almost arbitrary distinctions and scholastic hair-splitting between two departments that are both housed in the City's Department of Public Works.

As discussed above, Plaintiff has, in responding to the present motion, put forward two primary theories of liability: (1) that the water valve box was improperly installed and that because of this improper installation, the depression resulted; and (2) that the City failed to monitor and maintain the crosswalk. The record indicates that the second theory falls entirely within the road department's ambit. The road department is charged with monitoring road surfaces, doing emergency repairs, and addressing any immediate tripping hazards. To the extent that Plaintiff's case is premised on a breach of the duty to monitor and repair, the record indicates that this responsibility was that of the road department, which acted as the day-to-day eyes and ears of the public works department and would have performed any initial repairs to make the surface safe, until more permanent repairs could be done.

As to the first theory, there is simply insufficient evidence for the Court to split this responsibility into a separate cause of action or theory of negligence. Plaintiff's expert has offered some conclusory statements, but these statements are not enough to show that the City had a duty to install a specific water valve box system, or that the water department was negligent for not doing so. Apart from the analysis above, there is a pleading problem with Plaintiff's theory. Her complaint cites to "maintenance and/or repair" not installation. Plaintiff cannot show when the water valve box was installed and what standards were applicable at the

time of installation.  Plaintiff also cannot show if issues with the box caused the depression.  On this point, Mr. Melchior's affidavit presumes that the water valve box had failed and that the failure was due to a lack of adequate support, which was necessary because of its high traffic location.  These conclusions beg the question of what caused the depression in the first place, and nothing in the record connects the general issues with water valve boxes to this specific water valve box and the surrounding depression.  In fact, there is no evidence that the water box itself failed.[10]  This is a problem for Plaintiff who must establish the proximate cause in this case.  *Collins v. Thomas*, 2007 Vt. 92, ¶ 8 ("Although proximate cause ordinarily is characterized as a jury issue, it may be decided as a matter of law ... where all reasonable minds would construe the facts and circumstances one way." (quotations omitted)).  It is also important because immunity rests upon the distinction between the realms of water and streets.  The record indicates that the water department only became involved if the underlying water system feature was broken or began to fail.  In all other cases, it was a street issue for the road department to resolve.  In fact, even if it was a failure of the water system, it was first a road issue to provide temporary repair.

For these reasons, the Court finds that the duty to monitor and repair was first and foremost a road issue.  Therefore, the City's failure to monitor the roadway surface and perform repairs falls within the road department's primary responsibility to monitor and repair streets and sidewalks.  Such actions or inactions are protected by municipal immunity, which applies in the present case.  *Civetti*, 2020 VT 35, at ¶ 9.  Based on this application of municipal immunity, Plaintiff's sole claim of negligence must be dismissed as the City's invocation of immunity is appropriate in the present case.

## **ORDER**

Based on the foregoing, Defendant City of Montpelier's motion for summary judgment based on municipal immunity is **Granted.**  The present matter is **Dismissed** pursuant to V.R.C.P. 56 and the doctrine of municipal sovereign immunity.  The jury trial in this matter is cancelled.

Electronically signed on 4/27/2026 10:13 AM pursuant to V.R.E.F. 9(d)

_____
Daniel P. Richardson
Superior Court Judge

---

[10] Except for the immunity issue that divides the liability into governmental and proprietary fields, this distinction would be meaningless because Plaintiff has, as noted in the prior section, a case for breach based on a failure to detect and repair.

11