MICHAEL WELSH & WIFE v. THE VILLAGE OF RUTLAND.

*Incorporated Village not Liable for Injuries Resulting from Negligence of Engineer of Fire Department in thawing out a Hydrant. Pleading. Variance.*

1. An incorporated village is not liable for injuries resulting from the negligence of an engineer of its fire department while he was engaged in thawing out a hydrant, whereby water escaped, formed into ice on the street, and a traveller falling on it was injured; thus, the defendant in pursuance of charter authority had supplied itself with water, both for public and private use, by laying aqueducts with hydrants attached: it had also established a fire department, elected engineers and fire wardens; but the water works were under one management, the fire department under another,—the former, a source of revenue and the latter of expense. One of the engineers was directed by the village trustees to thaw out a hydrant; and in doing it, with the aid of assistants, he used the steam fire engine belonging to the fire department, the expense being borne by the village. The water, which was allowed to escape from the hydrant in order to clear it of broken ice, froze in the street, and the female plaintiff, falling thereon sustained the injuries complained of. *Held,* treating the allegations of negligence as established, the court below having ordered a verdict, that the defendant was not liable; that the doctrine of *respondeat superior* does not apply, the relation of master and servant does not exist in this case; that the members of the fire department were not agents of the corporation in the sense which rendered it liable for their acts, but were in the discharge of an official duty as public officers; that the benefit from their action accrued directly to the public, and not to the corporation as such; and that municipal corporations are not responsible for acts governmental and political in their character and done solely for the public benefit.
2. *Winn* v. *Rutland,* 52, 481, distinguished.
3. The declaration counted upon negligence in repairing the *aqueduct;* the proof related solely to negligence in repairing a *hydrant.* *Held,* no variance.

ACTION on the case to recover damages for injuries received by Mary Welsh, the wife of the plaintiff, Michael Welsh, caused by slipping down upon the ice at the South West corner of Center and Wales streets, in the village of Rutland, on the 26th day of

February, 1881. Trial by jury, March Term, 1882, VEAZEY, J., presiding. The jury failing to agree, the court directed a verdict for the defendant. The facts are sufficiently stated in the opinion of the court.

*Redington & Butler*, for the plaintiff.

There was no variance. *Hutchinson* v. *Granger*, 13 Vt. 386; *Skinner* v. *Grant*, 12 Vt. 456; Rob. Dig. p. 739, s. 47; 15 Vt. 643; 18 Vt. 87; 40 Vt. 648; 53 Vt. 546. The distinction is plain between the responsibilities of towns for acts done in their public capacity in the discharge of duties imposed upon them by the legislature for the public benefit, and for acts done in what may be called their private character as in the management of property or rights voluntary held by them for their immediate profit as a corporation. *Oliver* v. *Worcester*, 102 Mass. 499. The liability of municipal corporations in cases like this is well established. 1 Dill. Mun. Cor., s. 10; 2 Ib. s. 761; 91 U. S. 540; 30 Conn. 118; 34 Ib. 1; 40 Ib. 406. Cities and towns are liable for negligence like other corporations in managing or dealing with property or rights held by them for their own advantage. 2 Dill. Mun. Cor., ss. 778, 780; 29 Vt. 19; 31 Vt. 226; 49 Barb. 580; 60 Barb. 378; 1 Denio, 595; 3 Hill, 612; 61 Barb. 511; *Winn* v. *Rutland*, 52 Vt. 481. The liability of municipal corporations extends to traveling across as well as along the sidewalks. 105 Mass. 324. And it is their duty to keep streets and sidewalks safe for travel night and day. 2 Dill. Mun. Cor., ss. 551, 789, 791; *Manning* v. *Lowell*, 130 Mass. 21. A city is liable for the acts of its agents previously authorized or afterwards ratified. 19 Pick. 511; 2 Dill. Mun. Cor. ss. 764, 772; 131 Mass. 23; Rob. Dig. p. 188, s. 84; 40 Vt. 442; and this is so, if done by officers of the fire department. 2 Dill. Mun. Cor. 772; 2 Daly, 242; 3 Hun. 588; *Leon* v. *Boston*, 106 Mass. 451.

*W. C. Dunton* and *Edward Dana*, for the defendant.

The rule or maxim of *respondeat superior* does not apply.

The duty of providing protection against fire is performed by the defendant and its officers, for the general good of the public, in which the defendant has no particular interest and derives no benefit in its corporate capacity. The officers under whose direction the hydrants were thawed out, acted as officers charged with a public service. Dill. Mun. Cor. 774; *Hafford* v. *New Bedford*, 16 Gray, 297; *Fisher* v. *Boston*, 104 Mass. 87; *Taintor* v. *Worcester*, 123 Mass. 316; *Jewett* v. *New Haven*, 38 Conn. 368; 38 Ib. 228; *Hayes* v. *Oshkosh*, 33 Wis. 318; *Pray* v. *Jersey City*, 32 N. J. L. 394; *Hill* v. *Boston*, 122 Mass. 344; *Larrabee* v. *Peabody*, 128 Mass. 561; *Clark* v. *Waltham*, Ib. 567; *French* v. *Boston*, 129 Mass. 592; *Maximilian* v. *Mayor*, 62 N. Y. 160.

A municipal corporation in the exercise of power which it possesses for public purposes, and which it holds as part of the country, enjoys the exemption of government from responsibility for its own acts and the acts of its officers deriving their authority from the sovereign power. *Stewart* v. *City of New Orleans*, 9 La. Ann. 461.

The opinion of the court was delivered by

Royce, Ch. J. By its charter the village of Rutland is empowered: "To provide for the preservation of buildings from fires by precautionary measures and inspections, and to establish and regulate a fire department and fire companies;" also "to provide a supply of water for the protection of the village against fire and for other purposes, and to regulate the use of the same." Charter, s. 11. It is also provided by section 4 of the charter, which in pamphlet form is made a part of the case, that

"Said village, at every annual meeting thereof, shall elect one chief engineer, one first assistant engineer, and one second assistant engineer, who shall hold their respective offices one year, and who shall be, *ex officio*, fire wardens of said village, and have like power and authority, as such fire wardens; and the duties of said engineers shall be such as are or may be prescribed by the by-laws and ordinances of said village; and they shall, also, at all fires in said village, superintend all labor to extinguish

the same, subject to the by-laws and ordinances of said village. There shall be seven fire wardens of said village, who shall be appointed, and may at any time. be removed, by a majority of the board of trustees in their discretion."

In pursuance of this authority the village, by ordinance, established a fire department consisting of seven fire wardens and the fire and hook-and-ladder companies organized or to be organized by the village, to be under the direction of the chief engineer and his assistants, elected from the fire wardens, and made it the duty of the engineers and fire wardens, under the direction of the chief engineer,

"To examine into the condition of all reservoirs, hydrants and wells, and of the engines and all other fire apparatus, and the engine houses owned or rented by the village, and other property belonging to the fire department, and to take a general supervision and care of the same, and report the condition of the same through their chief to the trustees, as often as circumstances shall render it necessary, for the safe keeping and proper repair of all such property." ACT OF INCORPORATION AND ORDINANCES, pp. 29 and 30.

Under the authority of its charter, as amended, and by vote of the village, the village provided for a supply of water, for public and private use, laid water pipes through the streets and supplied them with hydrants for use in case of fire.

The declaration in this case sets forth the authority of the village to "construct, maintain, increase, improve, repair and keep in repair reservoirs, aqueducts, water courses, and water pipes for public and private uses in said village;" and counts upon an injury to the female plaintiff by reason that the defendant did "carelessly and negligently maintain, amend, and repair said aqueduct, water pipe and water course, and carelessly and negligently leave the same out of repair."

The facts, so far as material, appear to be that a certain hydrant, connected with the aqueduct pipe, having become frozen, one Davis, who was first assistant engineer of the fire department, acting under the direction of the chief engineer, reported its condition to the village trustees and was by them directed to thaw out the same at the expense of the village.

This he proceeded to do, using for the purpose the steam fire engine belonging to the fire department and with the aid of assistants, all being paid by the village for their services. The water, which was allowed to escape from the hydrant in order to clear it of broken ice, froze in the street, and the female plaintiff, falling thereon, sustained the injuries complained of. It further appeared that the water works and fire departments are distinct, and are managed by different officers. The former is a source of large revenue, paid by individuals for the use of the water, and is in charge of water commissioners who defray the expenses from this revenue, the works being the property of the village; the latter has no income, but is a source of expense which is paid by the village, under the general authority and direction of the board of trustees.

The evidence having been closed, the defendant moved for a verdict on the grounds; (1) that the plaintiffs upon their declaration could not recover; (2) that there was a fatal variance between the proof and the declaration; and (3) that whatever act was done was done by the fire department of said village, for the acts of which the village was not liable. The court overruled this motion so far as to submit the question of negligence to the jury, and if negligence was found, the amount of damages. The jury failing to agree, the court thereupon directed a verdict for the defendant, to which the plaintiffs excepted, as also to the overruling of their motion to set aside the verdict and for a new trial. Upon these exceptions the case comes to this court.

The second question raised by the defendant's motion is one of variance; and it is contended that the declaration counts upon a negligence in repairing the aqueduct, water pipe or water course, while the uncontradicted evidence showed that the aqueduct, water pipe or water course was not in need of repair, and no repairing or meddling with the same was attempted; but that whatever was done in the way of repair was solely to the *hydrant*, which is no part of the aqueduct, water pipe or water course, but entirely distinct from, though annexed to it. We do not think this proposition can stand. The declaration sets forth

Welsh v. Village of Rutland.

the authority of the defendant to construct, repair, etc., aqueducts, water courses and water pipes "for public and private uses;" that the aqueduct in question was laid "for the use aforesaid," and that the negligence complained of was in respect of "said" aqueduct, water pipe and water course. Webster defines a hydrant to be "a pipe or spout at which water may be drawn from the mains of an aqueduct;" and Worcester as "a discharge pipe from the mains of an aqueduct." While it may be true that the hydrant is no part of the aqueduct, so far as *private* uses of the water thereby supplied are concerned, it is certainly the very means by which the *public* uses of the water —namely, its use for the extinguishing of fires and the like—are obtained. As the negligence is charged in the user of an aqueduct constructed for public as well as private uses, therefore, and as hydrants are the means of drawing the water for public uses, we think there is no variance between the declaration and the proofs in this respect.

We therefore come to the question raised by the first and third grounds of the motion, namely, whether or not the defendant is liable in this action. In considering this, the state of the case, of course, requires that we treat as established the plaintiff's allegation that the repairing or thawing out of the hydrant was done in a careless and negligent manner.

The question of the liability of *quasi* corporations for the negligence, non-feasance or mis-feasance of the officers and agents through whose instrumentality their various functions are performed, is one of some difficulty and delicacy, and is obscured by a great number of decisions, particularly in this country, which are at least apparently conflicting and irreconcilable. This conflict, however, will be found due, upon closer examination, not so much to any ambiguity in the legal principles which it is our duty under the system of jurisprudence which obtains in this State to apply, as to the fact that while some courts have followed the doctrines of the common law, others have leaned more to the civil law; or else their decisions have been based on

statutory provisions, or some analogy to the local organic law or custom.

At common law it has been a settled principle ever since the leading case of *Russell* v. *Men of Devon*, 2 Term, 667, decided by Lord KENYON in 1788, that an individual cannot sustain an action against a political subdivision of the State based upon the misconduct or non-feasance of public officers. The reasons assigned in the earlier cases were that the maxim which declares it better for the individual to suffer than for the public to be inconvenienced, is stronger than the other principle, that for every injury the law gives a remedy, and that the plaintiff might levy his execution upon the property of any individual inhabitant —the organization having no fund legally applicable to its payment—thus giving rise to multiplicity of actions to enforce contribution and great public annoyance. But the more modern and broader ground is said to be, that these *quasi* corporations are mere instrumentalities for the administration of public government and the collection and disbursement of public moneys, raised by taxation for public uses, and which cannot lawfully be applied to the liquidation of damages caused by wrongful acts of their officers. *Riddle* v. *Proprietors*, 7 Mass. 187; *Mower* v. *Leicester*, 9 Id. 247; *Coolidge* v. *Brookline*, 114 Id. 596; *Com'rs* v. *Mighels*, 7 Ohio St. 109; *Findlater* v. *Duncan*, McL. & R. 911.

This rule of exemption extends, necessarily, to municipal corporations so far as the reason of it applies, and that is so far as the acts done are governmental and political in their character and solely *for the public benefit and protection;* or the negligence or non-feasance are in respect of the same matters. Instances of this non-liability may be found in 2 Thompson on Negligence 731, and in numerous cases. The immunity goes a step farther and protects such corporations in a total *neglect* to perform certain functions which are concededly for the public benefit and convenience. No action can be maintained against a municipal corporation by an individual, no matter how great an injury he might be able to show, for the neglect to build

sewers or water-works, or for defects or insufficiencies in the plans adopted for these or other public improvements; and this is upon the ground that in such matters the corporation is discharging a legislative or *quasi* judicial function, and its action is not reviewable by the law courts. If the plan adopted for the construction of such public works is not *necessarily* injurious or dangerous to private interests, and is executed with reasonable skill and prudence, the protection against liability is absolute. *Lansing* v. *Toolan*, 37 Mich. 152; 35 Id. 296; 34 Id. 25; *Merrifield* v. *Worcester*, 110 Mass. 216; 104 Id. 15; 4 Allen, 41; 6 Gray, 546; 13 Id. 194; *Van Pelt* v. *Davenport*, 42 Iowa, 308; *Carr* v. *Northern Liberties*, 35 Pa. St. 324. And the same rule applies to the action of municipal corporations in changing or grading their streets. 2 Dill. Mun. Cor. ss. 781, 798; Shearm. & Red. Neg. s. 370; 2 Thomp. Neg. 747; Mills Em. D. s. 195; *Perry* v. *Worcester*, 6 Gray, 546; *City of Shawneetown* v. *Mason*, 82 Ill. 337; *Scovil* v. *Geddings*, 7 Ohio, 562; *Hickox* v. *Cleveland*, 8 Id. 543.

When, however, municipal corporations are not in the exercise of their purely governmental functions, for the sole and immediate benefit of the public, but are exercising, as corporations, *private franchise* powers and privileges, which belong to them for their immediate corporate benefit, or dealing with property held by them for their corporate advantage, gain or emolument, though enuring ultimately to the benefit of the general public, then they become liable for *negligent* exercise of such powers precisely as are individuals. *Hill* v. *Boston*, 122 Mass. 344; 102 Id. 499; *Eastman* v. *Meredith*, 36 N. H. 284; *Providence* v. *Clapp*, 17 How. 161. So, of the construction and maintenance of water-works: *Murphy* v. *Lowell*, 124 Mass. 564; 122 Id. 344; 102 Id. 489; *City of Dayton* v. *Pease*, 4 Ohio St. 80; *Gibson* v. *Preston*, L. R. 5 Q. B. 219; *Southcoat* v. *Stanley*, 1 Hurlst. & N. 247; 2 Id. 204; 4 Id. 67; of ditches or drains: *Chicago* v. *Langlass*, 66 Ill. 361; 44 Id. 295; of bridges or culverts, and in respect of structures which may obstruct the flow of natural water courses and of the pollution

of them by sewage and the like: *Hill* v. *Boston, supra; Wheeler* v. *Worcester,* 10 Allen, 591; 4 Id. 41; *Parker* v. *Lowell,* 11 Gray, 353; *Conrad* v. *Ithaca,* 16 N. Y. 158; *Merrifield* v. *Worcester, supra; Hazeltine* v. *Case,* 46 Wis. 391; Hig. Waterc. 96; Wood Nuis. s. 688; and public works and improvements generally: *Lyme Regis* v. *Henley,* 3 B. & Ad. 77; *Nebraska City* v. *Campbell,* 2 Black, 590; 1 Id. 39; *Dayton* v. *Pease,* 4 Ohio St. 80; *Bigelow* v. *Randolph,* 14 Gray, 543; *Child* v. *Boston,* 4 Allen, 41. This rule has been held to apply to the discharge of sewage or other noxious substances in such manner as to pollute the surface water and damage the property of individuals. *Winn* v. *Rutland,* 52 Vt. 481; Gale Eas. 308; *Merrifield* v. *Lombard,* 13 Allen, 16; *Johnson* v. *Jordan,* 2 Met. 234; and if a plan adopted for public works must *necessarily* cause injury or peril to private persons or property, though executed with due care and skill, the law regards the execution of such a plan as negligence. 2 Thomp. Neg. 742; *Haskell* v. *New Bedford,* 108 Mass. 208; 30 Ind. 235; 35 Mich. 296; 33 Ala. 116; 3 Comst. 463.

The case at bar is grounded solely upon the application of the doctrine of *respondeat superior,* and can be maintained only by establishing the relation of master and servant, and the further proposition that the acts done were of such a character that for a negligent doing of them the village can be made liable. The acts done were done by and under the direction of the officers of the fire department and in pursuance of the duty imposed upon them by s. 4 of the ordinance establishing a fire department " to examine into the condition of all reservoirs, hydrants and wells, and of the engines and all other fire apparatus,      *      *      * and to take a general supervision and care of the same." They performed a further duty prescribed by that section in reporting the condition of these hydrants to the trustees, and were by said trustees directed to go on and thaw them out, and informed that the village would pay the expense of so doing. The question of *payment* seems to be about all that the trustees have to do with

such matters, under the charter and ordinances. It was the duty of the fire department officers to perform the service, if it was necessary; and neither this duty nor the mode of its performance could be affected in one way or another by the fact that payment of the expense was assured by the officers through whom *all* the expenses of the fire department must be paid. The propriety and necessity of thawing out the hydrants is not disputed; and putting them in condition for effective service in case of a fire, which was liable to occur at any moment, was not only directly in the line of duty prescribed by the ordinance just quoted, but also as important a part of the general duty to protect from and extinguish fires, as would be the laying of hose or hauling of fire apparatus while a conflagration was in actual progress.

The fire department and its service are of no benefit or profit to the village in its *corporate* capacity. They are not a source of income or profit to the village, but of expense, which is paid —not out of any special receipts or fund, nor defrayed, even in part, by assessment upon particular persons or classes benefitted, as in case of sewers or water works—but from the general fund raised by taxation of all the inhabitants. The benefit accrues, not in any sense to the corporation, as such, but directly to the public; and the members or employes of the department, whether acting as an independent, though subordinate organization, or under the direct authority of the general officers of the corporation, are, while acting in the line of duty prescribed for them, not agents of the corporation in the sense which renders it liable for their acts, but are in the discharge of an official duty as public officers. To such it is held in many cases that the doctrine of *respondeat superior* does not apply, and for their acts no liability can be imposed upon the corporation except by statute. Dill. Mun. Corp., (1st ed.) s. 774; *Hafford* v. *New Bedford*, 16 Gray, 297; *Fisher* v. *Boston*, 104 Mass. 87; *Maxmilian* v. *Mayor*, 62 N. Y. 160; *Smith* v. *Rochester*, 76 Id. 513; *Jewett* v. *New Haven*, 38 Conn. 368; *Ogg* v. *Lansing*, 35 Iowa, 495; *Field* v. *Des Moines*, 39 Id. 575; *Heller* v. *Sedalia*, 53 Mo. 159; *Howard* v. *San Francisco*, 51 Cal. 52.

In the recent case of *Wilcox* v. *The City of Chicago*, decided by the Illinois Supreme Court, in September, 1883, 16 Reporter, 652, which was an action for damages sustained by the plaintiff by reason of a collision between his carriage and a hook and ladder wagon, while in service at a fire, it was strongly urged that the city having *voluntarily* undertaken to organize à fire department, which was under its full control, it was unlike the case of a compulsory legislative requirement, and the doctrine of *respondeat superior* applied. But the court held otherwise, upon the grounds above indicated, and upon the further and in itself, as it seems to us, unanswerable ground of public policy and necessity. Judge WALKER, in delivering the opinion of the court, thus tersely and forcibly states these reasons: "If liable for neglect in this case the city must be held liable for every neglect of that department, and every employe connected with it, when acting within the line of duty. It would subject the city to the opinions of witnesses and jurors whether sufficient dispatch was used in reaching the fire after the alarm was given; whether the employes had used the requisite skill for its extinguishment; whether a sufficient force had been provided to secure safety; whether the city had provided proper engines and other appliances to answer the demands of the hazards of fire in the city; and many other things might be named that would form the subject of legal controversy. To permit recoveries to be had for all such and other acts would virtually render the city an insurer of every person's property within the limits of its jurisdiction.     *     *     *     To allow recoveries for the negligence of the fire department would almost certainly subject property holders to as great, if not greater, burdens than are suffered from the damages by fire. Sound public policy would forbid it, if it was not prohibited by authority."

If the defendant were held liable in this case, it would be impossible to avoid a similar conclusion in case of a negligent or careless act in putting the hydrants in order for efficiency, or in the use or repair of any of the fire apparatus, or indeed any negligence or carelessness of firemen while in active service at a fire;

and that would be a state of law which it must readily be seen cities and villages could not live under. It would make them virtually insurers of all property within their limits, and of their citizens, not only against damage by fire, but against all injuries to persons or property by reason of the efforts used to stay or extinguish fires, provided any negligence or want of due care and skill could be established to the satisfaction of a jury.

We find no error, and the judgment of the County Court is affirmed.

NOTE BY ROYCE, CH. J.—Since the above opinion was written my attention has been called to the case of *Edgerly* v. *Concord*. to appear in the 59th N. H. The action was brought to recover damages occasioned by a defective highway. It appeared that the mayor and city council were engaged in testing the force and capacity of a hydrant at the intersection of two streets, and that the hose and hydrant were in the hands of members of the fire department, and water was being thrown under direction of the mayor upon buildings in the vicinity. It was so thrown that it frightened the plaintiff's horse, and in consequence of the fright the plaintiff was thrown from his carriage and injured. The defendant moved for a non-suit, which was denied. The Supreme Court held that the motion should have been granted. Chief Justice DOE, in the opinion, says that the experiment was the proper work of the fire department, like the trial of a steam fire engine, hose cart or other fire-extinguishing apparatus. Such an experiment might not be judiciously postponed until the neighborhood was on fire.