NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 35

No. 24-AP-275

| | |
|---|---|
| John H. Belter, Jr. et al. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| City of Burlington | February Term, 2025 |

Samuel Hoar, Jr., J.

James W. Swift, Vincent J. Todd, and Wendy E. Radcliff of Langrock Sperry & Wool, LLP, Middlebury, for Plaintiffs-Appellants.

Malachi T. Brennan, Geoffrey H. Hand, and Rachel L. Seelig of SRH Law PLLC, Burlington, for Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **COHEN, J.** Plaintiffs John Belter, Joyce Belter, David Belter, and the Belter Family Partnership seek to hold defendant City of Burlington liable for soil and water contamination caused by runoff from Burlington International Airport, which abuts their property in South Burlington. Plaintiffs appeal the civil division's order dismissing their complaint for failure to join a necessary and indispensable party and on the basis of municipal immunity. Plaintiffs claim the trial court erred in its analysis of Vermont Rule of Civil Procedure 19 by ignoring Vermont's common law lack of contribution among joint tortfeasors and not considering the specific claims brought in the case below. Plaintiffs further argue the trial court erred in its analysis of the extent of municipal immunity by failing to acknowledge the property-maintenance

functions at the center of plaintiff's claims against defendant. We affirm in part and reverse in part.

## I. Factual and Procedural Background

¶ 2. Plaintiffs alleged the following facts in their complaint. Plaintiffs own a dairy farm and multiple residences adjacent to and downgradient from Burlington International Airport. Defendant has leased a portion of the airport to the Vermont Air National Guard since the 1950s. Beginning in the 1970s, defendant contracted with the Guard, requiring the Guard to provide firefighting services at the airport. From 1970 until 2014, the Guard used aqueous film-forming foam, a water-soluble fire suppressant, as part of its firefighting activities.

¶ 3. The aqueous film-forming foam contained per- and polyfluoroalkyl substances, commonly known as PFAS. The United States Environmental Protection Agency designated PFAS as "Emerging Contaminants of Concern," and in Vermont, they are listed as "Hazardous Materials" because of their threat to human health and the environment. PFAS can leach into the soil and groundwater when used.

¶ 4. The soil and water around the airport are contaminated with PFAS, including the soil and well water on plaintiffs' property. In 2017, testing of plaintiffs' well water found PFAS in concentrations which exceeded the groundwater enforcement standard by six and a half times. That year, defendant installed a new stormwater management system at the Burlington airport. Runoff from this system also flows onto plaintiffs' property. Samples taken in successive years continue to show very high levels of PFAS in plaintiffs' well water and surface water.

¶ 5. In September 2021, plaintiffs sued defendant for failure to contain PFAS on defendant's property. Plaintiffs alleged seven counts: (1) negligence in allowing the Guard to use firefighting foams that contaminated plaintiffs' property with PFAS; (2) trespass in the form of PFAS entering plaintiffs' property; (3) private nuisance due to the infiltration of PFAS into the drinking water; (4) a de facto taking of the property by defendant through the contamination of the

2

property by PFAS; (5) violation of the Vermont Groundwater Protection Act, 10 V.S.A. § 1410(a)(4); (6) "increased water surface drainage"; and (7) direct negligence by defendant for discharging polluted water onto plaintiff's property.

¶ 6. Defendant moved to dismiss the complaint for failure to join the United States and the Guard as indispensable parties. Defendant argued the United States would be prejudiced if it were not joined, as it was already involved in multiple lawsuits surrounding its use of PFAS in firefighting foams, which had been consolidated into a multidistrict litigation in federal court in South Carolina. Further, if the United States was not joined, defendant would be prejudiced because the actions of the Guard pursuant to policies specified by the United States were the ultimate cause of plaintiffs' complaint. Defendant argued that it lacked control over its tenant's activities and a court order enjoining it from carrying out those activities would subject it to inconsistent obligations. Defendant also might have to file an indemnity claim, which could lead to contradictory findings or liability under V.R.C.P. 19(a)(ii). Defendant argued that because the United States was entitled to sovereign immunity from suit in state court, the case should be dismissed in its entirety. Defendant also asserted that Counts 1-3 and 5 should be dismissed under the doctrine of municipal immunity, or at least limited to defendant's insurance coverage for such matters.

¶ 7. In July 2022, the court issued a preliminary decision holding that the United States and the Guard were necessary parties under Vermont Rule of Civil Procedure 19(a)(2)(i) and (ii). The court reasoned the suit against defendant would interfere with the existing multidistrict litigation arising from the National Guard's use of aqueous firefighting foam in facilities across the country. Similarly, the court found that because the Guard was an active participant in the firefighting activities that allegedly caused plaintiffs' injuries, it was a necessary party to the litigation. The court further concluded that litigating the case without the United States and the Guard would potentially expose defendant to multiple obligations because defendant had no ability

3

to prevent the United States from using PFAS-bearing substances in the future, which could cause further injury to plaintiffs and lead to further claims. The court noted that plaintiffs had conceded that joinder of the United States was prohibited by statute because the complaint was filed in state court. See 28 U.S.C. §§ 1346(b)(1), 1491(a)(1). However, it was unclear whether the Guard could be joined. The court therefore deferred ruling on the motion to dismiss and ordered joinder of the Guard for the narrow purpose of determining whether it could be sued in this action.

¶ 8. The parties subsequently filed a stipulation agreeing that because the Guard had been acting as an agent of the United States in conducting its firefighting activities, it was protected by sovereign immunity and could not be joined as a party to the action. They therefore jointly moved to dismiss the Guard as a party without prejudice.

¶ 9. In March 2023, the court partially granted defendant's motion to dismiss, holding both the United States and the Guard were indispensable parties under V.R.C.P. 19(b). The court concluded the indispensability of the Guard and the United States barred claims which stemmed from the United States and the Guard's use of PFAS-bearing foams at the airport, which were all counts except for Count 6. The court also concluded that because firefighting services are a governmental function, municipal immunity shielded defendant from Counts 1-3, 5, and 7 to the extent those claims sounded in negligence, unless defendant had waived immunity by obtaining insurance coverage for such claims. The court therefore dismissed all of plaintiffs' claims except for Count 6.

¶ 10. In August 2024, the parties stipulated to dismissal of Count 6 with prejudice. Plaintiffs then appealed the trial court's July 2022 and March 2023 decisions.

II. Analysis

¶ 11. In Vermont, courts generally view motions to dismiss unfavorably. See Davis v. Am. Legion, 2014 VT 134, ¶ 12, 198 Vt. 204, 114 A.3d 99. Here, the trial court dismissed plaintiffs' complaint for failure to join a party under Vermont Rule of Civil Procedure 12(b)(7)

4

and for lack of subject-matter jurisdiction under Rule 12(b)(1). We review the latter decision de novo, taking all facts pled in the complaint as true and resolving all doubts in favor of the nonmoving party. Jordan v. State Agency of Transp., 166 Vt. 509, 511, 702 A.2d 58, 60 (1997) (applying de novo standard when reviewing dismissal for lack of subject matter jurisdiction). This Court has not stated the standard of review for dismissal under Rule 12(b)(7). Because our rules are modeled on the Federal Rules of Civil Procedure, we look to federal case law for guidance on the applicable standard. See Watson v. Vill. at Northshore I Ass'n, 2018 VT 8, ¶ 80, 207 Vt. 154, 184 A.3d 1133 (relying on federal case law interpreting federal rules to construe similar Vermont rules of civil procedure). Federal courts review dismissal for failure to join a party under Rule 19 for abuse of discretion. Am. Trucking Ass'n v. N.Y. State Thruway Auth., 795 F.3d 351, 356 (2d Cir. 2015). We adopt this abuse of discretion standard for a dismissal under Rule 12(b)(7) for failure to join a party. See Watson, 2018 VT 8, ¶ 80. "Questions of law that inform a [trial] court's Rule 19 determination are reviewed de novo. An exercise of discretion that rests on an error of law is necessarily an abuse of discretion." Am. Trucking Ass'n, 795 F.3d at 356 (citation omitted).

¶ 12. On appeal, plaintiffs argue that the court's dismissal of their complaint for failure to join a necessary and indispensable party ignored Vermont's common-law rule that there is no contribution among joint tortfeasors, meaning that plaintiffs may choose whom they sue. Plaintiffs maintain the court erred in concluding that the Guard was a necessary party because the actions of the Guard are immaterial to plaintiffs' claims that defendant failed to contain contaminated water on its own property. Plaintiffs also argue that municipal immunity does not bar claims of trespass and nuisance or violation of the Groundwater Protection Act. Lastly, plaintiffs argue the court failed to properly apply the governmental-proprietary function test because the function at issue is municipal airport maintenance and operation, not firefighting services. We affirm the court's dismissal on Count 1 but reverse the dismissal for Counts 2-5 and 7 because the United States and

5

the Guard were not necessary parties and remand for further proceedings consistent with this opinion.

## A. V.R.C.P. 19

¶ 13.  We first consider whether the court properly applied Vermont Rule of Civil Procedure 19 when determining that dismissal was warranted under Rule 12(b)(7).[*]  Rule 19(a)(2) requires joinder of a person if the person claims an interest in the action and disposition in their absence "may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest." V.R.C.P. 19(a)(2).  If a necessary party cannot be joined, then the court must determine under Rule 19(b) if the suit may proceed in the party's absence.

¶ 14.  Plaintiffs claimed in Count 1 that "on multiple occasions [the Guard] provided firefighting services, and practiced fighting fires, at [Burlington airport] and on its Base in a negligent manner, directly and proximately causing the PFAS contamination of Plaintiffs' property."  While couched in terms of defendant's nondelegable duty to provide firefighting services, we agree with the trial court that Count 1 is entirely based in the negligence of the unjoined third parties.  See Stevenson v. Cap. Fire Mut. Aid Sys., Inc., 163 Vt. 623, 625, 661 A.2d 86, 89 (1995) (mem.) ("To determine the nature of the claim we look to the substance of the complaint rather than its precise terminology.").  The Guard and the United States clearly have an interest in Count 1 and a finding on this count by a trial court could lead to inconsistent determinations of fault for the United States, which is currently involved in similar litigation in

---

[*] We do not reach a conclusion on Count 6, as it has already been dismissed by the parties and plaintiffs waived their right to appeal dismissal of Count 6.  Plaintiffs do not challenge the dismissal of Count 6.

another court. The trial court properly concluded that the United States and the Guard were necessary parties to this claim and acted within its discretion in dismissing it under Rule 12(b)(7).

¶ 15. However, Counts 2-5 and 7 are all based on the spread of contaminated water from defendant's property, not the Guard's firefighting activities. Plaintiffs alleged nuisance, trespass, taking, violation of the Groundwater Protection Act, and direct negligence by defendant in failing to prevent contaminated water from traveling onto plaintiffs' property. The source of the contamination is not at issue. Nor do plaintiffs' claims require a determination of the toxicity of PFAS, its effect on human health, or whether the United States or the Guard knew or should have known that using the aqueous firefighting foams would spread PFAS. Cf. In re Aqueous Film-Forming Foams Prods. Liab. Litig., 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018) (discussing issues raised in multidistrict litigation). Plaintiffs' suit involves no manufacturer of the foams, and the question is not focused on the concealment of dangers. Plaintiffs do not argue that the United States made an improper policy decision in mandating the use of the foams. Rather, plaintiffs' case has to do with what defendant did or did not do to limit the damage by containing the runoff from the foams on its own property. A finding of negligence, trespass, or nuisance against defendant therefore will not affect the ability of the United States or the Guard to defend themselves against the claims raised in the multidistrict litigation.

¶ 16. The court alternatively concluded that the Guard was a necessary party because it was an "active participant" in the firefighting activities. The court relied on Laker Airways, Inc. v. Brit. Airways, PLC, which states that "a joint tortfeasor will be considered a necessary party when the absent party emerges as an active participant in the allegations made in the complaint that are critical to the disposition of the important issues in the litigation." 182 F.3d 843, 848 (11th Cir. 1999) (quotations omitted). Assuming without deciding that we would follow the active-participant test set forth in Laker Airways, Inc., the Guard does not qualify as a necessary party under that test with regard to any of plaintiffs' claims other than Count 1. While the Guard

7

undisputedly engaged in firefighting, there is no allegation that it played a role in defendant's decisions regarding maintenance and upkeep on the airport property that might have allowed discharge of contaminated water onto plaintiffs' property.

¶ 17. Finally, to the extent that the United States or the Guard are joint tortfeasors with defendant on Counts 2-5 and 7, allowing the suit to proceed will not unfairly expose them to liability because Vermont law does not allow contribution among joint tortfeasors. See, e.g., Haupt v. Triggs, 2022 VT 61, ¶ 9, 217 Vt. 382, 295 A.3d 845 ("We have for decades declined to revisit our no-contribution rule, 'preferring not to substitute judicial fiat for legislative action.' " (internal quotation marks omitted) (quoting Levine v. Wyeth, 2006 VT 107, ¶ 39, 183 Vt. 76, 944 A.2d 179)).

¶ 18. The court also concluded the United States and the Guard were necessary parties under Rule 19(a)(2)(ii) because a ruling in their absence would cause defendant to incur multiple obligations. The court reasoned defendant was powerless to change the Guard's practices, and if the Guard continued to use PFAS, plaintiffs could potentially bring new claims for damages every year.

¶ 19. The trial court erred in determining that the United States and the Guard were necessary parties to Counts 2-5 and 7 under this prong. As discussed above, these claims stem from defendant's failure to prevent contaminated water from traveling onto plaintiffs' land, not the Guard's use of PFAS at the Burlington airport. With or without the Guard, defendant could still be liable for multiple obligations if future contamination arose due to defendant's own future failure to contain the water. Moreover, it is speculative to suggest that the Guard will return to using PFAS-bearing foams in their firefighting operations without any notice to defendant, its landlord, and thus prevent defendant from exercising control over future activity. See Kwon v. Edson, 2019 VT 59, ¶ 26, 210 Vt. 557, 217 A.3d 935 ("[T]he court cannot bridge evidentiary gaps with speculation." (quotation marks and alteration omitted)).

8

¶ 20. Finally, injuries sustained by plaintiffs at issue in this litigation would come from the contamination already caused by defendant's lack of containment of the current PFAS on the Burlington airport property. Further litigation on injuries sustained from these discharges of PFAS onto plaintiffs' property by defendant would be blocked by res judicata following final judgment in the instant case. Moyers v. Poon, 2021 VT 46, ¶ 27, 215 Vt. 118, 266 A.3d 1253. Under these circumstances, the court abused its discretion in holding that defendant was likely to incur multiple obligations if the Guard and the United States were not joined to the action.

¶ 21. We conclude that the Guard and the United States were not necessary parties to Counts 2-5 and 7 of the complaint under either prong of Rule 19(a)(2) and their joinder was therefore not required. The court abused its discretion is dismissing Counts 2-5 and 7. We accordingly need not address the court's analysis of whether the Guard and the United States were indispensable parties under Rule 19(b) on Counts 2-5 and 7.

## B. Municipal Immunity

¶ 22. Because we conclude that the court improperly dismissed Counts 2-5 and 7 for nonjoinder, we must consider the court's ruling that to the extent insurance is not available to cover plaintiffs' claims, they are barred by municipal immunity for Counts 2-3, 5, and 7. We review the court's ruling de novo. Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245, 30 A.3d 1263. We conclude that there are insufficient facts to determine whether municipal immunity applies here, and therefore remand for further consideration of this issue.

¶ 23. Plaintiffs argue defendant is not immune from liability for Counts 2-3, 5, and 7 because defendant's ownership and operation of the Burlington airport, not its firefighting activities, is the proprietary function at issue. They further claim that defendant waived its immunity by purchasing insurance and that municipalities are not immune from trespass and nuisance claims or claims under the Groundwater Protection Act.

9

¶ 24. "Pursuant to Vermont's common law of municipal immunity, absent insurance coverage, those functions which are governmental are protected by the doctrine of sovereign immunity, while, in contrast, the governmental unit will be liable for injuries caused or sustained in furtherance of its proprietary functions." Civetti v. Turner, 2020 VT 23, ¶ 8, 212 Vt. 185, 233 A.3d 1056 (quotation and alteration omitted). "The rationale for this is that municipalities perform governmental responsibilities for the general public as instrumentalities of the state; they conduct proprietary activities only for the benefit of the municipality and its residents." Hillerby v. Town of Colchester, 167 Vt. 270, 272, 706 A.2d 446, 447 (1997).

¶ 25. "[T]he rule as to liability from negligence arising from the construction, repair or other work performed by a municipality may be either 'governmental' or 'proprietary,' depending upon the use and purpose for which the labor is being performed." Fuller v. City of Rutland, 122 Vt. 284, 287, 171 A.2d 58, 59 (1961). Proprietary functions are generally those which take place for the benefit of the municipality, such as revenue generation, even if those functions may also serve the general public. See Welsh v. Vill. of Rutland, 56 Vt. 228, 235-37 (1883) (contrasting construction of drains and sewers, which are traditionally considered proprietary functions, with firefighting, which is governmental activity because town must expend its revenue to maintain the service and will never receive profit from the service). When "municipal corporations . . . deal[] with property held by them for their corporate advantage, gain or emolument, though enuring ultimately to the benefit of the general public, then they become liable for negligent exercise of such powers precisely as are individuals." Id. at 235; see Courchesne v. Town of Weathersfield, 2003 VT 62, ¶ 11, 175 Vt. 585, 830 A.2d 118 (mem.) (discussing how municipality that sells seven times more gravel for private sale than it used for public purposes was engaged in proprietary function) (citing Hinesburg Sand & Gravel Co. v. Town of Hinesburg, 135 Vt. 484, 486-87, 380 A.2d 64, 66 (1977)).

¶ 26. Municipal airport operations are generally considered to be proprietary functions, even if governmental activities can be involved in the regular running of an airport. 18A McQuillin, L. Mun. Corp., § 53:190 (3d ed. 2025) ("Although governmental functions may be involved in some phases of airport operation and maintenance, a city in leasing for private uses for revenue airport property acts in its proprietary capacity as lessor, with consequent duties and responsibilities, including liability for negligence."). Decisions from the federal district court in Vermont and other jurisdictions focus on the pecuniary benefit to the municipality when determining if a particular activity at municipal airports is proprietary. See, e.g., Katz v. City of Burlington, No. 91-CV-35, slip op. at *7-8 (D. Vt. Aug. 10, 1993) (holding maintenance at airport was proprietary because City maintained street and sidewalk to encourage airport use and maintained land rented to rental car company from which City profited); AGI Assocs., LLC v. City of Hickory, 773 F.3d 576, 579, 582 (4th Cir. 2014) (holding municipality engaged in services for profit at airport, which is not action inherent for public good, and acted as corporation); Stryker v. City of Atlanta, 738 F. Supp. 1423, 1427-28 (N.D. Ga.1990) (concluding airport was designed to provide revenue for municipality through leasing portions of airport, even if airport provided some public good).

¶ 27. Here, the trial court focused on the Guard's firefighting function and found that activity to be shielded by municipal immunity. We conclude that the trial court viewed the complaint too narrowly. It is undisputed that firefighting has long been recognized as a governmental function. See, e.g., Welsh, 56 Vt. at 237; Morgan v. Vill. of Stowe, 92 Vt. 338, 344, 104 A. 339, 341 (1918). A municipality is immune from tort claims arising from negligently maintained fire suppression systems because fire protection was a governmental act "solely for the public benefit and protection." Welsh, 56 Vt. at 234. However, a determination of the function of the municipality for the purpose of immunity must be based in the purpose of the activity at the root of plaintiffs' complaint. Vt. Gas Sys. v. City of Burlington, 153 Vt. 210, 214, 571 A.2d 45,

11

48 (1989) (noting principle applies to tort claims but declining to extend principle to utility relocation cases). In Counts 2-3, 5, and 7, plaintiffs are not seeking to hold defendant liable for its firefighting functions, but for alleged failures of maintenance and operation of the Burlington airport that caused polluted water to run onto their land. See supra, ¶ 15; These broader functions are arguably proprietary. See Katz, No. 91-CV-35, at *7-8. The record before us is insufficient to allow us to make such a determination in the first instance, however. We therefore reverse and remand for the court to consider whether municipal immunity applies to the maintenance and operation activities alleged in the surviving counts of the complaint.

¶ 28. Because we reverse the dismissal of Counts 2-3, 5, and 7 for the above reasons, we need not reach plaintiffs' arguments that municipal immunity cannot bar trespass, nuisance, and Groundwater Protection Act claims, or the issue of insurance coverage.

The dismissal of Count 1 is affirmed. The dismissal of Counts 2-5 and 7 is reversed and the matter is remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice

12